SEWALL W. CROSBY *vs.* INHABITANTS OF DRACUT & others

A town, at a meeting called " to see if the town will build a new school-house," voted " that the selectmen be authorized to build a school-house, if they think it neces-sary." The selectmen designated a piece of land for the school-house, and offered the owner a price, which he refused, saying to them that it was worth more, and'thereupon they said they should proceed according to law. The school-house was built on the land without further objection from the owner, and one of his family went to school there. The town established school districts under the St. of 1870, *c.* 196, after the taking of the land by the selectmen. *Held*, in a writ of entry, brought before the transfer of the school property by the town to the districts, by the owner of the land against the town and the school district in which the land lay, (1) that the acts of the town did not effect a legal location of the school-house; (2) that the owner had not waived his right to main-tain the action; (3) that judgment should be against the town, and not against the dis-trict; and (4) that the town could not be allowed for improvements, under the Gen. Sts. *c.* 134, § 19.

WRIT OF ENTRY against the Inhabitants of Dracut and the Inhabitants of School District Number Six in Dracut, to recover a lot of land in that town. Writ dated April 24, 1871. Plea *nul disseisin.* Trial in the superior court, before *Devens,* J., who reported the case as follows :

The school districts in Dracut were abolished by the St. of 1869, *c.* 110. The warrant for the annual town meeting, held March 7, 1870, contained this article : " To see if the town will build a new school-house in District Number Six, and make ap-propriations for the same." At the meeting, it was voted " that the selectmen be authorized to build a school-house in District Number Six, if in their judgment they shall think it necessary,' and " that the selectmen be authorized to borrow money to de-fray the expenses of building a school-house in District Number Six, if in their judgment they shall think it necessary."

On August 2, 1870, the selectmen went upon the demanded premises, and, without previous notice to the demandant, put stones upon the four corners thereof, for the purpose of desig-nating the lot. After so doing they went to the demandant, in-formed him of what they had done, and proposed to purchase the lot. He said that the school-house ought not to be located there ; that it was too near his house ; and that he did not want it there, and suggested some alterations in the bounds, which were made,

The selectmen then offered him $50 for the lot, which he declined to take and said if the land was worth anything it was worth $200. The selectmen replied that, if he would not sell it at a reasonable price, they should proceed to take it according to law, and went away.

" On August 13, the selectmen, without any further notice to the demandant, and without his previous knowledge, went upon the premises with a surveyor, and measured and staked them out as they had been before designated. When they had finished, the demandant came along, and they informed him that they had staked out the land, and tendered him $50 therefor, which he refused to take. In about one week they began building a school-house thereon, which was finished in about a month at a cost of $1100, and a school was kept therein during the winter following. The demandant lived near the lot and in sight thereof ; saw it more or less every day, and never made any further objection to the selectmen or to any one in regard to the occupation of the lot, the building of the school-house, or the keeping of the district school there. He was an inhabitant of the district, and an inmate of his family went to school there." On September 6, 1870, the town voted to reëstablish the school districts. On March 6, 1871, the town accepted the report by the selectmen of their location of the school-house. On June 24, 1871, the town distributed the school property to the districts.

The tenants contended that, " if there were any irregularities in the taking, they were waived by the demandant, and, if not waived, they had reason to believe they were waived and that they held under a title which they had reason to believe good."

The case was reported for the determination of this court, " by request of parties, to order such judgment therein as is proper and according to law, against either or both tenants according as one or both are tenants ; the case to be sent back for judgment, and for an assessor to be appointed, to assess the improvements if allowed, and the value of the land without the improvements; also rents, profits and damages, in case the demandant recovers."

*A. P. Bonney & G. Stevens*, for the demandant.

*D. S. Richardson & G. F. Richardson*, (*A. C. Varnum* with them,) for the tenants. There was a waiver of any irregularities. The tenants are entitled to be allowed for betterments under the Gen. Sts. *c.* 134, § 19, as having held under a title which they "had reason to believe good."

AMES, J. Under the provisions of the Gen. Sts. *c.* 38, § 37, every town not divided into school districts, " at a meeting legally called for the purpose, may determine the location of its school-houses, and adopt all necessary measures to purchase or procure the land for the accommodation thereof." No power in that particular is given to the selectmen, except to select and lay out a lot, not exceeding eighty square rods, within the limits of the particular location designated by the town. The only article in the warrant relating to the subject matter was in these words, namely: " To see if the town will build a new school-house in District Number Six, and make appropriations for the same." The record wholly fails to show that the attention of the voters was called to any particular place, or to the land of any particular proprietor, within that district. The action of the town upon this article is, if possible, a greater difficulty, in the way of sustaining its proceedings, than the deficiencies of the article in the warrant. The vote of the town was merely " that the selectmen be authorized to build a school-house in District Number Six, if in their judgment they shall think it necessary." In this state of facts, it is manifestly impossible to say that there has been on the part of the town a substantial compliance with the requirements of the statute. *Harris* v. *Marblehead*, 10 Gray, 40. They have not only failed to determine the location of the new school-house, but they have delegated it to the discretion of the selectmen whether any such school-house shall be built.

The tenants contend, upon the authority of *Hooper* v. *Bridgewater*, 102 Mass. 512, that there is evidence of a waiver on the part of the demandant of all such objections. We think however that the report furnishes no evidence from which such a waiver could be properly inferred. The case cited shows undoubtedly that formal notice to the landowner and tender of damages, and generally all such provisions as were intended specially for his

benefit, it was in his power to waive. If any such waiver on his part could extend any further, we see no evidence whatever of any waiver which would remedy so deeply seated a defect in the title of the tenants to the lot of land in question. The report indicates that the selectmen understood that it was not a case of a negotiation or compromise, but a proceeding in which he stood upon his legal rights, and in which they were to take the land according to law, and this the town has not done.

Upon the facts of this case we think that no allowance should be made for improvements upon the land under the Gen. Sts. *c.* 134, § 19. *Harris* v. *Marblehead,* 10 Gray, 40.

As the suit was commenced before the distribution of the property to the school districts under the St. of 1870, *c.* 196, the judgment should be against the Inhabitants of Dracut, and not against the district. *Judgment for the demandant.*