## ISAAC G. REED *vs.* INHABITANTS OF ACTON.

Middlesex.    January 15. — March 15, 1875.    AMES & ENDICOTT, JJ., absent.

An article in a warrant for a town meeting "to see if the town will instruct the selectmen to purchase or take land in South or West Acton for the location of school-houses," is sufficient, under the Gen. Sts. *c.* 18, § 22, to authorize the town to designate a lot in West Acton for a school-house.

A town, at a meeting called "to see if the town will vote to build school-houses in South and West Acton, and to raise money to pay for the same," and "to see if the town will instruct the selectmen to purchase or take land in South or West Acton for the location of school-houses," voted "to build two new school-houses the present

year, one each in South and West Acton, if the districts want them," and "that the selectmen be authorized and instructed to purchase or take land for building sites in South and West Acton whenever a majority of the legal voters in either of said districts shall agree upon a location, and shall desire the land to be so taken or purchased," and "to appropriate" a certain sum of money "for building a school-house in South Acton; also the same sum for building a new school-house in West Acton, this sum not including the cost of the land taken." *Semble,* that this was not a sufficient designation of land by the town to authorize the selectmen to select out of it a school-house lot under the Gen. Sts. *c.* 38, §§ 37, 38.

A town at a meeting held in March voted upon the articles named in the warrant, and then voted "that the meeting stand adjourned to the April meeting." It had been the uniform custom of the town for fifty years to hold a town meeting annually on the first Monday of April. *Held,* that the adjournment was to a fixed future time, and that the town had authority at the April meeting to vote upon matters contained in the warrant for the March meeting, if the rights of third parties had not become vested under the votes passed at the March meeting.

Under an article in a warrant for a town meeting, to see if the town will instruct the selectmen to purchase or take land for the location of a school-house, a vote "that the selectmen be instructed to purchase or take the lot in front of the house of A. B., known as the C. lot, as a building site for a school-house," is a sufficient designation of land as a suitable place for the erection of a school-house, and would authorize the selectmen to appropriate and take a lot within the place designated.

The selectmen of a town duly authorized by the town under the Gen. Sts. *c.* 38, §§ 37, 38, to purchase or take a designated lot of land as a site for a school-house, gave notice to the owner of the land, appointed a day for the hearing, and, upon the refusal of the owner to sell his land, proceeded to lay out and take the lot, and made a report of their doings, signed by a majority, which was filed in the clerk's office. The town afterwards approved their action. The report stated that "the selectmen did appraise the damages to the owner of said land as follows." But no appraisal followed. It was admitted that the selectmen did appraise the value of the land at $100, and tendered this sum to the owner, which he declined to accept. *Held,* upon a writ of entry brought by the owner to recover the land taken, that the proceedings were correct, and that the right of the town to hold the lot was not defeated by the error in the record.

WRIT OF ENTRY to recover a parcel of land in West Acton. Plea, *nul disseisin,* with a specification of defence that the land was taken for a school-house in accordance with law. Trial in the Superior Court, without a jury, before *Bacon,* J., who allowed a bill of exceptions in substance as follows:

The demandant's original title and seisin, and the disseisin by the tenants were admitted. The tenants claimed to justify the disseisin and their continued possession and occupancy of the premises only on the grounds set forth in their specification of defence. In support of this claim, and of their right to take and hold the premises or land described in the writ, the tenants put in evidence the following extracts from the records of the town.

In the warrant for a town meeting held March 4th, 1872, the 9th article was, " To see if the town will vote to build school-houses in South and West Acton, and raise money to pay for the same ;' and the 10th article was, " To see if the town will instruct the selectmen to purchase or take land in South and West Acton for the location of school-houses."

Upon these articles the town acted ; and under article 9, " Voted to build two new school-houses the present year, one each in South and West Acton, if the districts want them."

Under article 10, " Voted that the selectmen be authorized and instructed to purchase or take land for building sites in South and West Acton, whenever a majority of the legal voters in either of said districts shall agree upon a location, and shall desire the land to be so taken or purchased."

After the last named vote was passed, the town, at the same meeting voted under article 9, " to appropriate a sum of money not exceeding the cost of the new school-house in the centre district when completed (exclusive of the land for site) for building a school-house in South Acton. Also the same sum for building a new school-house in West Acton, this sum not including the cost of land purchased or taken for building sites for said houses." The adjournment of this meeting was as follows : " Voted that this meeting stand adjourned to the April meeting."

The town of Acton was not at that time legally divided into school-districts, and has not been so divided since ; but there was a definite portion of the territory of the town well known and called by the name of the West Acton district. The number of legal voters residing in that district at the time was one hundred and six. A meeting of these voters was called March 16, 1872, and was attended by eighty-eight of the one hundred and six voters. Forty-five voted in favor of the Heywood Lot (of which the land described in the demandant's declaration is a part) and forty-three voted in favor of certain other locations. This action was reported to the selectmen.

By virtue of a warrant dated March 25, 1872, a town meeting duly warned was held April 1, 1872. At the beginning of the record of the doings of this meeting is this recital : " A legal meeting of the inhabitants of the town of Acton held April 1, 1872, in pursuance of a warrant calling the same (and to which

time the last March meeting stood adjourned,) the articles in said warrant were acted upon in manner as follows."

After disposing of the articles in the warrant for the April meeting, none of which related to the subject of the Acton school-district or school-house, or to the previous March meeting warrant, the record proceeds to say: "Took up the March meeting warrant;" and "voted" under article 10 of this warrant "that the selectmen be instructed to purchase or take the lot in front of the house of George Gardner, known as the Heywood Lot, as a building site for a school-house in West Acton."

The land described in the demandant's declaration, and which the selectmen took, is a small part only of the Heywood Lot, which contains several acres of land, and of which the demandant owned only one hundred and eight rods.

Another town meeting was held in Acton on April 18, 1872, under a warrant duly issued April 8, 1872, and served. It was shown that it had been the uniform custom of the town for fifty years or more to hold a town meeting annually on the first Monday of April.

On April 15, 1872, the selectmen of Acton issued the following notice, due service of which was made : " Notice. Isaac G. Reed. Acton, April 15, 1872. Notice is hereby given that it is the intention of the selectmen of the town of Acton to take the land in said town formerly owned by Ebenezer Heywood, for the purpose of erecting a school-house thereon. Said land is near Charles Robinson's store in West Acton, and bounded on the Harvard turnpike, so called ; and that they will meet on the said premises for that purpose on said land the twenty-seventh day of April, 1872, at four o'clock **P. M.**, and all persons interested therein will govern themselves accordingly. Given under our hands this 15th day of April, 1872. James E. Billings, Joseph Noyes, Hiram J. Hapgood, Selectmen of Acton."

On April 27, 1872, the three selectmen, being the whole board, proceeded to take the land demanded in this action, and the following is a copy of the report of their doings in the premises, signed by two of their number, and dated April 27, 1872 : " Record and description of a lot of land taken for the location of a school-house in the west part of Acton, April 27, 1872. In accordance with a vote of the town of Acton passed at a meeting

held April 1, 1872, instructing the selectmen to purchase or take a certain lot of land in the west part of Acton, known as the Heywood Lot, in front of the dwelling-house of George Gardner, as a building site for a new school-house, we the subscribers, selectmen of Acton, did on the 27th day of April, 1872, at four o'clock P. M., after having given such notice and taking such preliminary steps as the law requires, proceed to take a piece of land lying on the southerly side of the turnpike (so called) leading from Concord to Harvard, and opposite the dwelling-house of George Gardner, being a part of the lot now or formerly owned by the heirs of Ebenezer Heywood, of Boxborough, for the purpose of a building site for a new school-house : said lot being bounded and described as follow, to wit : Beginning at the northwest corner of the premises, at a point on the southerly line of the turnpike, so called, distant thirteen and one half feet from the range of the easterly end of the easterly wing of Charles Robinson's store (measured at right angles thereto;) thence running easterly on said turnpike one hundred and seventy feet to a stake and stones ; thence south, 12° 15 minutes west, one hundred and thirty-two feet to a stake and stones ; thence north, 70° 10 minutes west, one hundred and sixty-five feet to a stake and stones at land of said Robinson ; thence by said Robinson's land north, 11° 20 minutes east, one hundred thirty-two feet to the corner first mentioned, said lot containing by measure eighty-one and twenty-one hundredths rods, and we the selectmen did appraise the damages to the owners of said land as follows.    James E. Billings, Joseph Noyes, Selectmen of Acton."

The report, although dated April 27, 1872, was not drawn up until April 29, 1872, when it was done at the request of the selectmen by W. D. Tuttle, town clerk, and was on that day signed by the two selectmen whose names it bears, and was left by them with the town clerk in his office, where it has since been kept. The clerk did not make any minute of the day the report was left in his office, and testified that he did not think that was necessary.    It is admitted that the tenants can (if it is competent to prove the same by parol) prove that the selectmen did appraise the damage of the demandant at $100, and that they tendered that sum to the demandant during the month of May, and after the 7th of May, 1872, which he declined to accept.    It is

also agreed that the demandant, on April 15 and 27, 1872, refused to sell his land to the town. But he was not requested to sell until after the selectmen had selected and laid out the lot in question as a school-house site ; and the town has erected a school-house on the land taken as aforesaid, and has accepted it for school purposes. The third selectman did not sign the report because he happened not to be present at the time, and not because he did not approve of the same.

At a town meeting held May 7, 1872, under a warrant issued April 25, 1872, and duly served, the town, under an article, " To see if the town will vote to accept the doings of the selectmen in taking land for a school-house in West Acton," " Voted to accept the doings of the selectmen in regard to taking land for a school-house in West Acton." The demandant attended the last named meeting, and in open meeting protested against the action of the town, and declared if they took his land they would do it " at their peril."

The tenants asked the court to rule, as matter of law, that the demandant could not maintain this action ; but the judge refused so to rule, and did rule, upon the foregoing state of facts, that the town did not legally take and cannot rightfully hold possession of the demandant's premises, and found that the tenants did disseise the demandant in manner and form as he has alleged and set forth in his declaration, and ordered judgment in favor of the demandant. The tenants alleged exceptions.

*G. A. Somerby,* for the tenants.

*S. B. Ives, Jr.,* for the demandant.

MORTON, J. The town undertook to appropriate the demandant's land for the purposes of a school-house. As the town is not divided into school-districts, the proceedings were intended to be had under the Gen. Sts. *c.* 38, §§ 37, 38, and the town passed certain votes for the purpose of designating the land to be taken, the validity and effect of which are first to be considered. It is well settled that it is a condition precedent to the right to take land in this mode, that the town should, at a meeting legally called and held, determine the location of the school-house, and designate generally the land to be taken. Gen. Sts. *c.* 38, § 37. *Crosby* v. *Dracut,* 109 Mass. 206. *Harris* v. *Marblehead,* 10 Gray, 40. In the warrant for the March meeting

in 1872, the tenth article was, " To see if the town will instruct the selectmen to purchase or take land in South or West Acton for the location of school-houses."

The statute requires that the subject matter to be acted upon shall be contained in the warrant. Gen. Sts. c. 18, § 22. But articles in warrants must often be, from the nature of the case, general in their description of the subject matter, and we are of opinion that the article we are considering sufficiently expressed the subject to be acted upon, and would authorize the town to designate a lot in West Acton for a school-house. *Sherman* v. *Torrey*, 99 Mass. 472, and cases cited. The plaintiff relies upon *Crosby* v. *Dracut* in support of his views upon this point, but that case did not turn upon the sufficiency of the article in the warrant. The vote of the town was held to be insufficient. Besides, the article we are considering is more specific than the article in that case.

It cannot be claimed that the vote at the March meeting was a sufficient compliance with the statute. It does not designate any lot, nor determine the location of the school-house, but merely authorizes the selectmen to purchase or take land for building sites in South and West Acton whenever a majority of the legal voters in either of said districts shall agree upon a location and shall desire the land to be so taken or purchased. But the town and the selectmen did not act under this vote, treating it as a legal designation of the school-house lot, and it is therefore not necessary to consider more particularly the vote or the action of the voters of the West Acton district under it. The town and selectmen, in taking the land of the demandant acted under a vote passed at a meeting held April 1, 1872, and the question is as to the validity of this vote.

At the March meeting, after acting as above stated upon the tenth article of the warrant, the town " voted that this meeting stand adjourned to the April meeting." It was shown that it has been the uniform custom of the town for fifty years or more to hold a town meeting annually on the first Monday of April ; and on April 1, 1872, being the first Monday, a town meeting duly warned was held, of which the record begins as follows : " A legal meeting of the inhabitants of the town of Acton, held April 1, 1872, in pursuance of a warrant calling the same, (and to

which time the last March meeting stood adjourned,) the articles in said warrant were acted upon in manner as follows." After disposing of the articles in the April warrant, the record proceeds as follows: " Took up the March meeting warrant," and under article ten of this warrant it was "voted that the selectmen be instructed to purchase or take the lot in front of the house of George Gardner, known as the Heywood Lot, as a building site for a school-house in West Acton."

This vote, if valid, was a sufficient designation by the town of land as a suitable place for the erection of a school-house, and would authorize the selectmen, if they complied with the other provisions of the statute, to appropriate and take a lot within the place designated, not exceeding eighty square rods, exclusive of the land occupied by the school buildings, for that purpose.

The question is, whether the town could legally pass this vote, there being no article in the April warrant referring to this subject. A town has power to adjourn its meetings from time to time; Gen. Sts. *c.* 18, § 20 ; and, at an adjourned meeting, any matters included in the warrant of the former meeting may be reconsidered or acted upon, if no intervening rights of other parties have become vested. *Withington* v. *Harvard*, 8 Cush. 66 *Hunneman* v. *Grafton*, 10 Met. 454. Undoubtedly, as claimed by the demandant, an adjournment should be to a fixed future time, so that the inhabitants may thus be notified of the time when the subjects embraced in the warrant may be acted upon. In this case, if the March meeting had been in terms adjourned to the meeting to be held on the first Monday of April, 1872, there would be no invalidity in the adjournment. And we are of opinion that the language of the vote imports this in substance. It is that " this meeting stand adjourned to the April meeting." The use of the definite article " the " is significant, and implies that the voters had in mind a definite, fixed meeting to be held in April. The fact that it was the uniform custom to hold an annual meeting on the first Monday of April cannot be used to vary or control the record, but may fairly be used to explain and give force to language which might otherwise be indefinite.

It seems to us that the record shows with substantial certainty that the intent and purpose was to adjourn the March meeting to the meeting to be held on the first Monday of April, 1872, and

that the inhabitants would be by it fairly notified and warned that the business of the March meeting might then be considered and acted on. It follows that the action of the town at the meeting on the first of April, designating the Heywood Lot as a building site for a school-house in West Acton, was legal.

The selectmen proceeded to act under this vote, and on April 15, 1872, gave notice to the demandant of their intention to take a part of the land designated by the town, and appointed the 27th day of April, 1872, at four o'clock P. M., for a hearing, upon the premises. The demandant refused to sell his land, and on said April 27, 1872, the selectmen proceeded to lay out and take the lot of land in question, and made a report of their doings, signed by a majority, which was filed in the clerk's office, and the town afterwards accepted and approved of their action. The only defect we see in their report is that it fails to show that they appraised the damages of the demandant. After describing the lot taken, it proceeds, " and we the selectmen did appraise the damages to the owners of said land as follows." But no appraisal follows. It is admitted that the selectmen did in fact appraise the damage of the demandant at one hundred dollars, and tendered him that sum, which he declined to accept. It is clear that there is merely a clerical error or omission in the record which cannot injure the demandant. The town and the selectmen have in fact done all things which are conditions precedent to their right to take and hold the land. The town has designated it ; the selectmen, after the owner's refusal to sell it, and after due notice to the demandant, have, with the approbation of the town, selected and laid out the school-house lot ; they have appraised his damage, and have tendered him the amount. We do not think that an error in the record of this kind should render the whole proceedings of the town invalid, and defeat their right to hold the lot for school purposes. It is not necessary to give it this effect in order to protect any rights of the demandant. If he is unwilling to accept the amount tendered him for his land, he has the right to apply to the county commissioners for a jury under the statute, and for this purpose may treat the record as an adjudication that he has sustained no damage. *Monagle* v. *County Commissioners*, 8 Cush. 360. *North Reading* v. *County Commissioners*, 7 Gray 109. *Hildreth* v. *Lowell*, 11 Gray, 345.

Upon the whole case, we are of opinion that there was no irregularity in the proceedings of the town or the selectmen which rendered invalid their taking of the land in question, and therefore that the ruling of the learned judge who presided at the trial, that the town did not legally take and could not rightfully hold possession of the demanded premises, was erroneous.

*Exceptions sustained.*