ELIZA SPALDING & others *vs.* INHABITANTS OF CHELMSFORD.

Middlesex. Jan. 15. — March 15, 1875. AMES & ENDICOTT, JJ., absent.

A town, which was not divided into school-districts, at a meeting called "to see if the town will vote to authorize the selectmen to purchase a piece of land for the new school-house, in district number 2, so called, and act in relation thereto," voted "that the selectmen be instructed to select and lay out a school-house lot in district number 2, so called." *Held*, that this was not a sufficient designation of land by the town to authorize the selectmen to take land for a school-house lot, under the Gen. Sts. *c.* 38, §§ 37, 38.

When a town is not divided into school-districts, the provision of the Gen. Sts. *c.* 38, § 38, that "when land has been designated by a town, school-district, or those acting under its authority, or determined upon by the selectmen as a suitable place for the erection of a school-house," if the owner refuses to sell, the selectmen may proceed, in the manner provided, to lay out a school-house lot, does not authorize the town to delegate to the selectmen the duty of designating the land.

A town which illegally takes a lot of land for a school-house lot, and erects a school-house thereon, is not entitled to an allowance for improvements under the Gen. Sts. *c.* 134, § 19.

WRIT OF ENTRY to recover a parcel of land in Chelmsford. Plea, *nul disseisin*, with a specification of defence that the lot was taken for a school-house in accordance with law. Trial in this court, before *Devens*, J., who reported the case for the consideration of the full court. The material facts appear in the opinion.

*A. P. Bonney*, for the demandants.

*D. S. Richardson* (*G. F. Richardson* with him,) for the tenant.

MORTON, J. In *Harris* v. *Marblehead*, 10 Gray, 40, it was held that, under the St. of 1848, *c.* 237, in a town not divided into school-districts, it was necessary that the town should

designate a suitable place for the erection of a school-house, by a vote at a legal meeting duly recorded, before the selectmen could legally proceed to select and lay out a lot for that purpose. The same point was adjudged in *Crosby* v. *Dracut*, 109 Mass. 206, which was decided under the Gen. Sts. *c*. 38, § 38.

These cases are decisive of the case at bar. The only action of the town, under which they justify the taking of the demanded premises, is a vote "that the selectmen be instructed to select and lay out a school-house lot in district No. 2, so called." This is not a designation of any land by a vote of the town, and is not a compliance with the statutes.

The tenant contends that under the Gen. Sts. *c*. 38, § 38, it is not necessary that the land should be designated by the town, but that this may be done by "those acting under its authority," and that therefore a designation by the selectmen acting under the above recited vote was sufficient. This point was involved, though not discussed, in *Crosby* v. *Dracut*, *supra*. The thirty-eighth section provides that "when land has been designated by a town, school-district, or those acting under its authority, or determined upon by the selectmen as a suitable place for the erection of a school-house," if the owner refuses to sell, the selectmen may proceed, in the manner provided, to lay out a school-house lot. The words "or those acting under its authority" were first inserted in the general statutes, being an amendment of the commissioners' report, and we think refer only to their immediate antecedent, "school district." A statement of the different provisions of the law upon the subject, tends to show that this was the intention of the Legislature.

There are four ways in which the location of school-houses may be determined.

1. The Gen. Sts. *c*. 38, § 37, provide that "any town, at a meeting legally called for the purpose, may determine the location of its school-houses, and adopt all necessary measures to purchase or procure the land for the accommodation thereof."

2. Where school districts exist, the Gen. Sts. *c*. 39, § 18, provide that "the legal voters of any district, at a meeting called for that purpose, may raise money for erecting or repairing school-houses in their district; for purchasing or hiring any buildings to be used as school-houses, and land for the use and accommodation

thereof; and for purchasing libraries and necessary school apparatus, fuel, furniture, and other necessary articles, for the use of schools; they may also determine in what part of their district such school-houses shall stand, and choose any committee to carry into effect the provisions aforesaid."

3. The Gen. Sts. *c.* 39, § 20, provide that "if a school-district cannot determine by a vote of two thirds of the legal voters present and voting thereon, where to place their school-house, the selectmen, upon application made to them by the committee appointed to build or procure the school-house, or by five or more of the legal voters of the district, shall determine where such school-house shall be placed."

4. Two adjacent towns, having each less than five hundred families or householders, may form one high school district; in which case the school committees of the two towns shall elect one person from each of their respective boards, and the persons thus elected shall form the school committee for the joint district, and the committee thus formed shall "determine the location of the school-house authorized to be built by the towns forming the district." Gen. Sts. *c.* 38, §§ 3–5.

The manifest object of § 38 is to provide a mode of proceedings by which, after land has been designated in either of the modes provided by law, as a suitable place for a school-house, it may be taken for that purpose if the owner refuses to sell it.

The words "or those acting under its authority" may have been intended to meet the case, otherwise unprovided for, where land is designated by the committee acting on behalf of a union high school district; or they may have been inserted upon the supposition that under the provisions of *c.* 39, § 18, above cited, school-districts might designate the land by a committee appointed for that purpose. However this may be, we are satisfied that it was not the intention of the Legislature, by this amendment, to change the provisions of the section immediately preceding, which require that the town shall determine the location of its school-houses, at a meeting legally called for that purpose, and which neither expressly or by implication, give the town any authority to delegate this duty to any officers or agents.

This construction makes a harmonious system, while, by that claimed by the tenant, different provisions of the statutes enacted

at the same time, and as part of the same system, are inconsistent and conflicting.

It follows from these considerations, without discussing the other questions raised, that the demandant is entitled to judgment.

The only other question to be considered is as to the tenant's right to recover for improvements. In *Harris* v. *Marblehead*, and *Crosby* v. *Dracut*, above cited, it was held, that a town which proceeds illegally to take land for a school-house is not entitled to an allowance for improvements under the Gen. Sts. *c.* 134, § 19. The same rule applies to this case, and the tenant is not entitled to recover for improvements.

*Judgment for the demandants.*