JAMES COMISKEY *vs.* CITY OF LYNN.

Essex.    January 11, 12, 1917. — March 2, 1917.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CARROLL, JJ.

*Eminent Domain. Statute,* Construction. *Lynn. Electric Transmission Line. Waterworks.*

It is an established rule in the interpretation of statutes that the power to take land by eminent domain must be granted by the Legislature either in express terms or by necessary implication and that it is not to be inferred from vague and doubtful general phrases.

Under St. 1901, c. 508, authorizing the city of Lynn to take an additional water supply and providing that the said city "may take, by purchase, or otherwise, all lands, rights of way and easements necessary for establishing filtration beds for holding and preserving all water taken by purchase or otherwise under authority of this act, and for conveying the same to any part of said city," although the city of Lynn has power to take land for the purpose of laying and maintaining a pipe line to conduct water to the city of Lynn from a part of the Ipswich River in a neighboring town, it has no power to take an easement in additional land for the sole purpose of constructing and maintaining a power transmission line for conducting a current of electricity to a pumping station, which is to be used to bring the waters of Ipswich River to the city of Lynn.

A further provision of the same statute, that the city of Lynn "may make excavations, procure and operate machinery, and provide such other means and appliances as may be necessary for the establishment and maintenance of complete and effective water works," is too vague and general to indicate a grant of power to take by eminent domain an easement in land for the purpose of constructing an electric transmission line.

BILL IN EQUITY, filed in the Superior Court on October 23, 1916, to enjoin the city of Lynn from entering the land of the plaintiff at Lynnfield and erecting any poles or other apparatus or structures thereon or doing thereon any act of ownership under an alleged taking on October 13, 1916, of a strip of the plaintiff's land purporting to have been made under St. 1901, c. 508, for the purpose of constructing and maintaining a power transmission line with poles, wires and other apparatus for conducting a current of electricity to a pumping station being erected by the defendant at North Reading for the purpose of bringing the waters of Ipswich River to the city of Lynn.

The case was heard by *Jenney, J.,* who made a decree enjoining the defendant from entering the plaintiff's land or from performing any act of ownership thereon under the alleged taking of October 13, 1916, purporting to have been made under St. 1901, c. 508, and ordering the defendant to pay to the plaintiff costs in the sum of $15.54.  The defendant appealed.

*A. G. Wadleigh,* for the defendant.

*H. A. Bowen,* for the plaintiff.

DE COURCY, J.  The St. 1901, c. 508, authorized the city of Lynn, for the purpose of providing an additional water supply, to take by purchase or otherwise the water of Ipswich River and its tributaries.  Under this statute the city made an admittedly valid taking of land for the purpose of establishing and maintaining a pipe line to be used in conveying the water to Lynn.  Subsequently, in October, 1916, the city purported to take by right of eminent domain an easement in a strip of land twenty feet wide extending about fourteen hundred feet through the plaintiff's land, for the purpose of constructing and forever maintaining a power transmission line, with necessary poles, wires and other apparatus, for conducting electric current from Lynn to a pumping station on the banks of the Ipswich River at North Reading.  The pipe line and the proposed transmission line do not coincide; and the land taken for the pipe line nowhere touches the plaintiff's premises. The question for determination is whether this attempted taking of an easement in the plaintiff's land is authorized by the 1901 statute.

The language of the statute is, that the City of Lynn "may take, by purchase or otherwise, all lands, rights of way and easements

necessary for establishing filtration beds for holding and preserving all water taken by purchase or otherwise under authority of this act, and for conveying the same to any part of said city, and may erect on the land thus taken or held proper dams, buildings, fixtures and structures, and may make excavations, procure and operate machinery, and provide such other means and appliances as may be necessary for the establishment and maintenance of complete and effective water works."

It is an established rule of interpretation that statutes authorizing the exercise of the power to take private property without the consent of the owner are to be construed with reasonable strictness. The authority of the city to take the plaintiff's land by eminent domain exists only in case the Legislature has delegated that power in express terms or by necessary implication; it is not to be inferred from vague and doubtful general phrases. Lewis, Em. Dom. (3d ed.) §§ 371, 388. The instant statute expressly empowers the city to take lands, rights of way, and easements necessary for (1) establishing filtration beds, (2) holding and preserving water, and (3) conveying water to any part of said city. The first two may be put one side. The third, according to the ordinary and natural meaning of the words used, contemplates a taking for the purpose of laying a pipe line such as the city already has established. It is difficult to find in this language authority to take additional land or an easement therein for the sole purposes of an electric power line to the pumping station.

The statute next authorizes the city to erect dams, buildings, fixtures and structures; but this is only incidental to the above mentioned express power, and must be exercised "on the land thus taken or held." The remaining language, "and may make excavations, procure and operate machinery, and provide such other means and appliances as may be necessary for the establishment and maintenance of complete and effective water works," is too vague and general to indicate a grant of a power to take land by eminent domain, in view of the rule of interpretation already mentioned.

When the statute is viewed in the light of contemporaneous legislation, and we consider the uniform legislative policy with reference to the maintenance of lines for the transmission of electricity, it seems clear that the Legislature did not intend by the instant

statute to empower the city of Lynn to make the taking in question. St. 1901, c. 508, was enacted on June 14, 1901. We may assume that the laws then existing with reference to electric transmission lines are those which appear in the Revised Laws, enacted November 21 of the same year. At that time the erection of such lines was confined to public ways; and their location, construction, insulation, and inspection was governed by numerous regulations. R. L. c. 122, §§ 1, 2, 16, 18, 20; c. 25, §§ 52, 54. Even when a municipality was authorized to supply an adjoining town with electric light or power, the same duties and restrictions in the exercise of such rights and franchises were imposed upon it as upon a private corporation. See, for instance, St. 1898, c. 143; St. 1900, c. 429. When the Legislature that passed the statute now under consideration authorized the electric companies in Beverly and Newburyport to extend their service to neighboring towns, the grant was made subject to the duties and liabilities set forth in the general laws. St. 1901, cc. 88, 139. And it is significant that in the act authorizing the town of Peabody to distribute electricity in the town of Lynnfield (where the plaintiff's land is located), this same Legislature required that a written location should be obtained from the board of selectmen of Lynnfield before any part of the plant could be constructed in that town. St. 1901, c. 97.

In the light of this history we do not believe that the Legislature intended by the language quoted from the instant statute to give to the city of Lynn an unrestricted, roving commission to erect poles and wires in the neighboring towns. Certainly they did not intend by such indefinite language to empower the defendant, for the purpose of constructing the transmission line, to take the plaintiff's land. At that time the Legislature never had allowed the taking of land for electric transmission lines, so far as we have been informed. And when they did make provision for such a right by the consolidating act, St. 1914, c. 742, § 128, the existence of the right was restricted to special and defined instances, and made subject to the approval of the board of gas and electric light commissioners, after a public hearing. It is to be noted, also, that the early legislative policy of attaching restrictions, regulations, and safeguards to grants of rights to erect and maintain transmission lines for electricity, has been continued down to the present. See

Sts. 1911, c. 509; 1914, c. 742, §§ 104, 127–130, 159; cc. 189, 737; Spec. St. 1915, c. 140.

In our opinion the alleged taking of the plaintiff's land by the city of Lynn, was not authorized by St. 1901, c. 508; and the decree of the Superior Court must be affirmed, with costs.

*Ordered accordingly.*