Trustees of Reservations *v.* Stockbridge.

THE TRUSTEES OF RESERVATIONS *vs.* TOWN OF
STOCKBRIDGE.

Suffolk.    January 4, 1965. — February 11, 1965.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER,
& SPIEGEL, JJ.

*Eminent Domain,* Authority for taking, Validity of taking.    *The Trustees
of Reservations. Equity Pleading and Practice,* Declaratory proceeding.

A demurrer to the bill in a suit in equity for declaratory relief must be
overruled if the bill states a case for such relief.    [513]

St. 1963, c. 824, § 2, authorizing the town of Stockbridge "to acquire . . .
[certain land of The Trustees of Reservations] by purchase or other-
wise pursuant to" a specified vote previously adopted by the town at a
town meeting which authorized the acquisition of the land "by eminent
domain under" G. L. c. 79 as well as by purchase or gift, adequately
empowered the town to take the land by eminent domain irrespective of
the validity of the town's vote.    [513–515]

BILL IN EQUITY filed in the Supreme Judicial Court for the
county of Suffolk on March 24, 1964.

The suit was reserved and reported by *Spalding,* J., with-
out decision.

*Herbert P. Gleason* for the plaintiff.

*Walter H. McLaughlin, Jr.* (*George A. McLaughlin* with
him) for the defendant.

SPALDING, J.    The objective of this bill in equity is to
obtain a declaration that a taking by the defendant of a
portion of the plaintiff's land was illegal.    The defendant
demurred.    The single justice reported the case on the
pleadings without decision.

We summarize the averments of the bill: The Trustees
of Reservations (plaintiff)[1] was incorporated under St.
1891, c. 352, as a charitable corporation "for the purpose of
acquiring, holding, arranging, maintaining and opening to

---

[1] The original name of the corporation was The Trustees of Public Reserva-
tions.

the public, under suitable regulations, beautiful and historical places and tracts of land within this Commonwealth.'' The plaintiff now maintains for the enjoyment of the public some thirty-eight reservations, aggregating about 6,000 acres throughout the Commonwealth. One of the reservations, known as Naumkeag, is located in the town of Stockbridge (town). It was devised to the plaintiff by the late Mabel Choate, a longtime summer resident of the town, who died on December 11, 1958. The plaintiff accepted Miss Choate's devise, and entered into possession of the premises on June 25, 1960. Since then, the plaintiff has held the property open for the enjoyment of the public.

Naumkeag consists of approximately forty acres of land on which are situated various buildings, including a dwelling designed by ''the internationally known architect,'' Stanford White. The house itself is a museum of period furniture, pictures, china and silverware. It overlooks varied and unusual gardens designed by a well known landscape architect. To the south and west of the house and gardens is a field or meadow which commands an extensive view of the Berkshires.

In June of 1963, officials of the town informed the plaintiff of their desire to purchase some twenty acres of Naumkeag for the erection of a new high school. The plaintiff took the position that it could not alienate the land consistently with its duty to the public, and that it would oppose any effort by the town to acquire the land. At a special town meeting on September 19, 1963, the town adopted the vote set forth in the margin.[1] On February 21, 1964,

---

[1] ''There be and hereby is approved the construction and original equipping of a new high school, including the acquisition of the land hereinafter described as a site for said new high school . . .; [Then follows an appropriation of $860,250.]

''The sum of $16,200 or such part thereof as shall be necessary shall be allocated from the above appropriation of $860,250, to be used to pay for such of the following described parcels of land as shall be selected by the School Building Committee hereinafter provided for, to be used as a site for the new high school hereinbefore authorized, viz.,

''(1) 20.26 acres of the southern portion of the land known as 'Naumkeag', owned by the Trustees of Reservations, said 20.26 acres being generally described as bounded by the Town Cemetery on the south, Church Street and the

the town, purporting to act under G. L. c. 79, filed an order of taking of a portion of the Naumkeag land in the appropriate registry of deeds. This taking was for the proposed high school.

The bill states a case within the declaratory judgment statute. The demurrer, therefore, must be overruled. *Carlton Hotel, Inc.* v. *Abrams*, 322 Mass. 201, 203, and cases cited. *Burnes* v. *Metropolitan Dist. Commn.* 325 Mass. 731, 733. What the parties really are seeking, as evidenced both by their pleadings and briefs, is a declaration of their rights with respect to the taking. We shall deal with the case on that footing. All the facts necessary for such a declaration are before us and are not in dispute.

The town in taking a portion of Naumkeag was acting under St. 1963, c. 824.[1] This act deals specifically with the property which is the subject of this controversy. By § 1, the plaintiff was authorized to sell and convey the land.[2]

easterly boundary of properties on Church Street, on the west, other land of 'Naumkeag' on the north and property now or formally [*sic*] of Oppermann on the east,

" (2) 26 acres of land situated on Route 102, comprising a portion of lands now or formerly belonging to Evans and Noble and all of the land now or formerly belonging to Tacy, said 26 acres being generally described as bounded on the west by land now or formerly of Evans, on the north by other land now or formerly of Evans and other land now or formerly of Noble, on the east by North Church Street and on the south by Route 102; and the Selectmen are hereby authorized to acquire the fee in the parcel of land so selected by purchase, by gift, *by eminent domain under Chapter 79 of the General Laws or otherwise . . .*" (emphasis supplied).

[1] This statute was enacted on November 15, 1963, and took effect on that date. The taking was in February, 1964. Very likely, as the plaintiff suggests, the special statute was enacted to avoid problems under G. L. c. 40, § 14, and G. L. c. 79, § 5A. Section 14 empowers a town to take by eminent domain "any land . . . within the . . . town not already appropriated to public use." Section 5A provides that "No historic landmark certified under the provisions of section twenty-seven of chapter nine and no property owned, preserved and maintained by any historical organization or society as an ancient landmark or as property of historical or antiquarian interest shall be taken without leave of the general court specially obtained."

[2] Section 1 reads as follows: "The Trustees of Reservations . . . is hereby authorized and empowered to sell for such consideration as it sees fit, and to convey to the town of Stockbridge the following portion of land in said town owned by said corporation, namely: approximately 20.26 acres of that portion of land in said town known as 'Naumkeag' said portion being generally described as bounded by the town's cemetery on the south, Church Street and the easterly boundaries of properties on Church Street on the west, other land of Naumkeag on the north, and the property now or formerly of one Oppermann on the east."

Section 2 provides that ''The town of Stockbridge is hereby authorized to acquire the property described in section one of this act for school purposes *by purchase or otherwise* pursuant to the vote adopted under article 6 of the warrant for the special town meeting . . . notwithstanding that this act was not in force at the time of the posting of the warrant for said meeting'' (emphasis supplied).

The plaintiff contends that this statute does not authorize a taking by eminent domain. It argues that in the absence of express language to that effect, the statute should not be construed to grant such authority. To be sure, the authority of a town to take land by eminent domain ''exists only in case the Legislature has delegated that power in express terms or by necessary implication; it is not to be inferred from vague and doubtful general phrases.'' *Comiskey* v. *Lynn,* 226 Mass. 210, 212. But, in St. 1963, c. 824, there is clearly such a necessary implication. Section 2 expressly refers to the town vote which empowered the selectmen to acquire the land. In that vote, the selectmen were ''authorized to acquire the fee . . . by purchase, by gift, by eminent domain under Chapter 79 of the General Laws or otherwise.'' In authorizing the town to acquire Naumkeag pursuant to this vote, the Legislature must have intended that the words ''by purchase or otherwise'' include a taking by eminent domain. See *Comiskey* v. *Lynn,* 226 Mass. 210, 211–212, where the court said that a statute which provided that the city of Lynn ''may take, by purchase or otherwise,'' authorized a taking by eminent domain. See also *Burt* v. *Merchants' Ins. Co.* 106 Mass. 356, 364, in which the word ''purchase'' was construed to include acquisitions obtained by the exercise of eminent domain. Compare *Nevins* v. *City Council of Springfield,* 227 Mass. 538, 540–541.

The plaintiff also argues that the town vote was ineffective to authorize the taking because it contained an improper delegation of discretion to the school building committee. This contention is based on the fact that the town vote authorized the taking of either one of two specifically

described parcels of land, rather than providing for the taking of only a single parcel. The plaintiff relies on G. L. c. 40, § 14, which requires that "no land, easement or right therein shall be taken or purchased under this section unless the taking or purchase thereof has previously been authorized . . . by vote of the town." In support of its position it cites cases construing the predecessors of this section. See *Harris* v. *Marblehead,* 10 Gray, 40, 41; *Crosby* v. *Dracut,* 109 Mass. 206; *Spalding* v. *Chelmsford,* 117 Mass. 393. These decisions need not be discussed, for here the town has statutory authority apart from G. L. c. 40, § 14. Section 2 of St. 1963, c. 824, authorized the town to acquire the Naumkeag property pursuant to the prior vote of the town which is now attacked by the plaintiff. We are of opinion, therefore, that the taking was valid.

An interlocutory decree is to be entered overruling the demurrer. A final decree is to be entered declaring the taking to be valid.

*So ordered.*