CITY OF NEW BEDFORD vs. ENERGY FACILITIES SITING ·
COUNCIL
(and a companion case[1]).

Suffolk. May 6, 1992. - August 20, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Statute*, Construction. *Energy Facilities Siting Council. Electric Company. Administrative Law*, Findings.

On appeal from a final decision of the Energy Facilities Siting Council approving the petition of a nonutility applicant to construct a coal-fired cogeneration power facility, this court concluded that, by declining to engage in a full comparative review of the environmental consequences, relative benefits, and feasibility of using alternative fuels and plants, the council failed to conform to its legislative mandate set forth in G. L. c. 164, § 69H. [484-489]

In proceedings before the Energy Facilities Siting Council with regard to a petition of a nonutility applicant to construct a coal-fired cogeneration power facility, the council's specific finding that the applicant established that "*New England* needs at least 300 MW of additional energy resources for reliability purposes beginning in 1995 and beyond" was inadequate, where G. L. c. 164, § 69H, mandates a "necessary energy supply for the *commonwealth*" (emphases supplied). [489]

In approving a petition of a nonutility applicant to construct a coal-fired cogeneration power facility, the Energy Facilities Siting Council failed to find that the additional power would be produced at the lowest possible cost to the rate payers, a finding which was necessary to conform to its legislative mandate. [489]

In proceedings before the Energy Facilities Siting Council with regard to a petition of a nonutility applicant to construct a coal-fired cogeneration power facility, the council failed to perform, in accordance with the statutory requirements set forth in G. L. c. 164, § 69H, a balancing to determine whether the environmental harm from the facility was outweighed by other statutory objectives, where it elevated to primary importance considerations of economic development, a factor not author-

_____

[1] Attorney General vs. Energy Facilities Siting Council; Eastern Energy Corporation, intervener.

ized by the statute as a basis for the siting of a new power plant. [489-490]

In proceedings before the Energy Facilities Siting Council with regard to a petition of a nonutility applicant to construct a coal-fired cogeneration power facility, the council failed explicitly and clearly to state the reasons for its final decision and failed to make adequate subsidiary findings to support its approval of a "dirtier" fuel and plant. [490]

CIVIL ACTIONS commenced in the Supreme Judicial Court for the county of Suffolk on August 30, 1991, and September 4, 1991, respectively.

The cases were reported by *O'Connor*, J.

*Frederick D. Augenstern*, Assistant Attorney General, for the Attorney General.

*Richard J. Moore*, Assistant City Solicitor (*Arthur J. Caron, Jr.*, City Solicitor, with him) for the city of New Bedford.

*Martha B. Sosman*, Special Assistant Attorney General, for Energy Facilities Siting Council.

*John A. DeTore* (*Robert N. Werlin* with him) for the intervener.

*Robert H. Russell, 3d, & Armond M. Cohen*, for Conservation Law Foundation & others, amici curiae, submitted a brief.

LYNCH, J: The city of New Bedford (New Bedford) and the Attorney General (collectively petitioners) appeal from a final decision of the Energy Facilities Siting Council (council) approving the petition of Eastern Energy Corporation (Eastern) to construct a coal-fired cogeneration power facility (facility) in New Bedford.[2] Eastern petitioned the council for approval to construct such a facility on January 29, 1990. The council granted the Attorney General's petition to inter-

[2]We acknowledge the assistance of the amicus brief filed by Conservation Law Foundation, Massachusetts Public Interest Research Group, Environmental Lobby of Massachusetts, The Greater New Bedford NO-COALition, Clean Water Action, and Massachusetts Citizens for Safe Energy.

vene in the proceedings.[3] After extensive discovery and four-teen days of evidentiary hearings, the council issued a tenta-tive decision conditionally approving the construction of the facility. Written comments were filed by the Attorney Gen-eral and others. The council then voted to approve the con-struction of the facility subject to certain conditions and re-quirements and issued a final decision. The Attorney General and New Bedford timely petitioned for appeal from the final decision. G. L. c. 25, § 5 (1990 ed.). A single justice of this court consolidated the appeals, allowed Eastern's motion to intervene, and reserved and reported the matter to this court.

At issue is the interpretation and application of the statu-tory mandate found in G. L. c. 164, § 69H (1990 ed.). We conclude that the council exceeded its authority under G. L. c. 164, § 69H, and therefore we remand this matter to the council to compare alternative energy resources in its review of Eastern's application.

The petitioners argue that (1) the council failed to analyze the environmental impact of the proposed power plant by failing to compare it with energy alternatives; (2) the council erred in finding that there was a "need" for the energy pro-posed by Eastern; (3) the council failed to make a finding that the new power would be at the lowest possible cost to the rate payers; and (4) the council failed to perform a bal-ancing to determine whether the environmental harm from the facility was outweighed by other statutory objectives be-cause it placed improper weight on the benefits of economic development of New Bedford and southeastern Massachu-setts in reaching its decision. In addition, the petitioners con-tend that the council's decision failed explicitly and clearly to state the reasons for its final decision and failed to make ade-quate subsidiary findings to support its conclusions.

---

[3]The council also granted intervener status to the Department of Envi-ronmental Management, the city of New Bedford, the Greater New Bed-ford NO-COALition, and Codman & Shurtleff, Inc. (C&S). C&S subse-quently withdrew from the proceedings. The council also granted "interested person" status to Robert H. Ladino, Henry B. Riley, and Mary T. Marshall and Donald J. Marshall.

"The starting point of our analysis is the language of the statute, 'the principal source of insight into Legislative purpose.' *Commonwealth* v. *Lightfoot*, 391 Mass. 718, 720 (1984)." *Simon* v. *State Examiners of Electricians*, 395 Mass. 238, 242 (1985).

General Laws c. 164, § 69H, states in part: "There is hereby established the Energy Facilities Siting Council which shall be responsible for implementing the energy policies contained in sections sixty-nine H to sixty-nine R, inclusive, to provide a necessary energy supply for the commonwealth *with a minimum impact on the environment* at the lowest possible cost" (emphasis added). Thus the statute mandates that the council balance environmental harm that would be caused by a new power plant against the other statutory objectives — providing a necessary energy supply at the lowest possible cost. In performing that balancing the council must evaluate whether the *minimum impact* standard has been met.

As its decision indicates, prior to this application the council had required a nonutility applicant to establish that its proposed project was superior to alternative approaches in terms of cost, environmental impact, reliability, and ability to address the previously identified need for energy. This past practice comports with the council's statutory mandate. Here, the council declined to engage in a full comparative review of the environmental consequences, relative benefits, and feasibility of using alternative fuels and plants. The council stated,

> "for non-utility generating facility proposals, the Siting Council traditionally has focussed on whether a particular project is the least-cost, least-environmental impact project when compared to a number of different generating technologies . . . . [H]owever, the Siting Council no longer views this comparative technology approach as effective in ensuring that resource additions proposed for the Commonwealth are necessary, least-cost, and minimize environmental impact. . . .

"In sum, it is our view that it is most appropriate to review a non-utility developer's project in light of a broad range of resource use and development policies."

The council set forth its new methodology of reviewing proposed facilities:

"In accordance with G. L. c. 164, sec. 69H, before approving an application to construct facilities, the Siting Council requires non-utility applicants to justify generating facility proposals in three phases. First, the Siting Council requires the applicant to show that additional energy resources are needed . . . . Second, the Siting Council requires the applicant to establish that its project is (1) consistent with the resource use and development policies of the Commonwealth . . . and (2) is viable as a source of energy over time . . . . Finally, the Siting Council requires the applicant to show that its site selection process has not overlooked or eliminated clearly superior sites and that the proposed site is acceptable in terms of cost, environmental impacts and reliability of supply . . . . In cases where a noticed alternative is required, the Siting Council also requires the applicant to show that the proposed site for the facility is superior to the alternative site in terms of cost, environmental impacts, and reliability of supply."

The statutory mandate, however, requires that the energy the facility will supply is necessary for the Commonwealth; that the supply of the energy involves a minimum impact on the environment; and that such energy is supplied at the lowest possible cost. Thus, the statutory balance involves weighing minimum environmental impact and cost. Nowhere in the new standard is this balance explicitly stated. Instead, the council attempts to balance the resource use and development policies of the Commonwealth. Only with respect to the site selection process does the council require the applicant to show that its site selection process has not overlooked or eliminated clearly superior sites and that the proposed site is

*acceptable* in terms of cost, environmental impact, and relia-
bility of supply. The new standard of review does not com-
port with the statutory mandate.

The council stated in its final decision that Eastern's peti-
tion was filed in accordance with G. L. c. 164, § 69H, and
pursuant to G. L. c. 164, § 69I (1990 ed.). Section 69I re-
quires every electric company[4] to file forecasts which include

> "(3) A description of actions planned to be taken by
> the company which will affect capacity to meet such
> needs or requirements, including, but not limited to: ex-
> pansion, reduction or removal of existing facilities; con-
> struction or acquisition of additional facilities; *a
> description of alternatives* to planned action such as
> other methods of generating, manufacturing or storing,
> other site locations, other sources of electrical power or
> gas, including facilities which operate on solar or geo-
> thermal energy and wind or facilities which operate on
> the principle of cogeneration or hydrogeneration, and no
> additional electrical power or gas; a reduction of re-
> quirements through load management; a description of
> the environmental impact of each proposed facility. . . .
> The council shall after public notice and a period for
> comment be empowered to issue and revise its own list
> of guidelines. A minimum of data shall be required by
> these guidelines from the applicant for review concern-
> ing land use impact, water resource impact, air quality
> impact, solid waste impact, radiation impact and noise
> impact." (Emphasis added.)

The clear intent of the Legislature in requiring these fore-
casts is to afford the council enough data to compare energy
resources to determine whether a particular project will sup-

---

[4]Eastern is an "[e]lectric company" as defined in G. L. c. 164, § 1 (1990
ed.). The council also found that Eastern's proposed generating facility
falls squarely within the definition of "facility" set forth at G. L. c. 164,
§ 69G (1990 ed.).

ply necessary energy with a minimum impact on the environment at the lowest possible cost.

The council argues that it need not compare the facility with alternative resources because the project will be compared with and have to compete with alternatives at the time it attempts to sell its energy to utilities. Therefore, the council argues, "It is not unreasonable for [it] to discontinue comparisons between a real project and hypotheticals when it knows that the project will, at a different but equally important regulatory stage, be subjected to and have to survive comparisons with actual and specific alternatives." The council in essence is saying that it can approve a facility and allow the project to be built; then, once resources are expended and the facility is complete, a comparison of alternatives at that stage may preclude the sale of any of the facility's energy. So stated the argument demonstrates its deficiencies.

The council also argues that it need not compare the facility with alternatives because it required Eastern to minimize the environmental impact of its facility by reducing its emissions. Minimizing or reducing the environmental impact of a particular project is not the equivalent of determining that the project will impart a minimum impact on the environment. It is logically impossible to conclude that a particular power plant produces the least possible — and hence minimum — impact on the environment without comparing such plant with other energy resource alternatives.

Finally, although the council's argument that the review format of the long-range forecast is not easily applied to a nonutility producer may be well taken, it is nevertheless required that any modifications to the procedure necessary to accommodate the nonutility producer must permit a review that fulfils the statutory mandate.

Since the enabling statute requires the council to "implement[ ] the energy policies . . . to provide a necessary energy supply for the commonwealth with a minimum impact on the environment at the lowest possible cost," G. L. c. 164, § 69H, any attempt by the council to eliminate assessment of the minimum impact on the environment requirement in

its review of new energy construction does not conform to the council's legislative mandate and is invalid. *Massachusetts Mun. Wholesale Elec. Co.* v. *Energy Facilities Siting Council*, 411 Mass. 183, 189 (1991). *Simon* v. *State Examiners of Electricians, supra* at 241.

*Other Issues which may Arise on Remand to the Council.*

1. New Bedford argues that the council failed to make a required finding that the power to be supplied by Eastern is necessary. The council made a specific finding that Eastern established that "*New England* needs at least 300 MW of additional energy resources for reliability purposes beginning in 1995 and beyond" (emphasis added). Because the statute mandates a "necessary energy supply for the *commonwealth*," this finding is inadequate (emphasis added).

2. New Bedford argues that the council failed to make a finding that the new power would be produced at the lowest possible cost to the rate payers. The council stated, "[W]hile the Siting Council finds that [Eastern] has established that the cost estimates associated with the proposed facilities are realistic for a facility of the size and design of the proposed project, we can make no finding as to whether [Eastern] has established that the cost estimates of the proposed facility have been minimized consistent with the mitigation of environmental impacts."

The council argues that it gave conditional approval to the project and withheld a final finding on cost until further data were submitted. Nowhere in its decision and order, however, did the council explicitly state its final approval was conditioned on submission of missing data. A finding that the new power would be produced at the lowest possible cost is necessary to conform to the council's legislative mandate.

3. The Attorney General argues that the council did not perform a balancing to determine whether the environmental harm from the facility was outweighed by other statutory objectives because it elevated to primary importance a factor not authorized by the statute as a basis for the siting of a new power plant — economic development. The council acknowledges its extensive discussion about the economic bene-

fit to the Commonwealth set forth in its analysis of need, but argues that its approval of the facility was in accord with the statutory requirements set forth in § 69H because the facility serves important policies and goals concerning resource use and development, consistent with the council's mandate to ensure an *adequate* supply at minimum cost.[5] In particular, it argues that the facility's contribution to reliability, cost, and stability satisfied the council that the project was consistent with goals of the statute. The council misstates its mandate. Ensuring an adequate supply is not the same as "provid[ing] a *necessary* energy supply for the commonwealth" (emphasis added). G. L. c. 164, § 69H. In addition, the mandate requires a balancing of minimum environmental impact and lowest possible cost. It is inappropriate for the council to elevate to primary importance the economic benefits to be contributed to the Commonwealth over a balancing of these factors.

4. The Attorney General also argues that the council failed explicitly to state that it was approving a dirtier fuel and plant on the basis that it had determined that other factors outweighed the acknowledged environmental harm that would be caused by the facility's construction and operation. We agree. The final decision must do more than merely identify conflicting interests and contentions. See *Hamilton v. Department of Pub. Utils.*, 346 Mass. 130, 137 (1963). The decision must be " 'accompanied by a statement of reasons . . . including determination of each issue of fact or law necessary to the decision . . . .' A purpose is to require the agency to give a 'guide to its reasons' so that this court may 'exercise . . . [its] function of appellate review.' " (Citations omitted.) *Id.*, quoting *Leen v. Assessors of Boston*, 345 Mass. 494, 502 (1963).

The matter is to be remanded to the council for reconsideration of Eastern's application consistent with this opinion.

---

[5]The council argues that resource use and development includes the encouragement of cogeneration and the enhancement of diversity in the Commonwealth's energy supply.

The council must explicitly state the basis of its determination, with adequate subsidiary findings to support its conclusions.

*So ordered.*