POINT OF PINES BEACH ASSOCIATION, INC., & another[1] *vs.*
ENERGY FACILITIES SITING BOARD & another.[2]

Suffolk. May 4, 1994. - January 11, 1995.

Present: LIACOS, C.J., WILKINS, LYNCH, & O'CONNOR, JJ.[3]

*Energy Facilities Siting Board. Electric Company. Statute*, Construction.

The Energy Facilities Siting Board was not entitled to rely on the Depart-
ment of Public Utilities' approval of power purchase agreements to es-
tablish the Commonwealth's need pursuant to G. L. c. 164, § 69J, for a
proposed power facility, where that would not constitute the indepen-
dent determination of need by the board as required by that statute.
[285-286]

The Energy Facilities Siting Board's approval of the construction of a cer-
tain power facility was set aside where the Department of Public Utili-
ties' approval of a power purchase agreement, standing alone, could not
support the board's inference of Commonwealth need under G. L.
c. 164, § 69J. [286-287]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on March 30, 1994.

The case was reported by *Lynch*, J.

The case was submitted on briefs.

*Martin R. Healy, Raymond J. Brassard & Robert B. Fos-
ter* for Point of Pines Beach Association, Inc.

*Denise DiCarlo*, Assistant City Solicitor, for city of Re-
vere, joined in a brief.

*John A. DeTore & Alan K. Posner*, for Altresco Lynn,
Inc., intervener.

---

[1]City of Revere.

[2]Altresco Lynn, Inc., intervener.

[3]Justice Nolan, who was on the panel hearing the case, has recused
himself.

*Michael B. Meyer & E. Michael Sloman*, Special Assistant Attorneys General, for Energy Facilities Siting Board.

*William S. Stowe*, for Boston Edison Company, amicus curiae, submitted a brief.

*Robert H. Russell, Third*, for Conservation Law Foundation & others, amici curiae, submitted a brief.

*Scott Harshbarger*, Attorney General, & *Frederick D. Augenstern*, for the Attorney General, amicus curiae, submitted a brief.

O'CONNOR, J. The plaintiffs appeal pursuant to G. L. c. 164, § 69P (1992 ed.), and G. L. c. 25, § 5 (1992 ed.), from a decision of the Energy Facilities Siting Board issued December 15, 1993. In that matter, Altresco Lynn, Inc. (Altresco), petitioned the board to approve Altresco's planned construction of a gas-fired cogeneration 170 megawatt power facility at the General Electric River Works in Lynn. The proposal contemplated a facility that would begin operation in 1996. The board concluded as follows:

"Here, in light of the need for the proposed project beginning in the year 2000 on reliability grounds, the Siting Board[4] finds that submission of (1) a signed and approved contract with [Boston Edison Company] for 132 [megawatts], or (2) signed and approved [power purchase agreements][5] which include capacity payments for at least 75 percent of the proposed project's electric output, will be sufficient to establish that the proposed project will provide a necessary energy supply for the Commonwealth. Altresco must satisfy this condition within four years from the date of this condi-

[4]Altresco had originally filed the petition with the Energy Facilities Siting Council. By St. 1992, c. 141, effective September 1, 1992, the Energy Facilities Siting Council was reorganized, renamed the Energy Facilities Siting Board, and merged into the Department of Public Utilities. The board is now within, but not under the control or supervision of, the Department of Public Utilities. Other than the name change, St. 1992, c. 141, has no bearing on this case.

[5]A power purchase agreement is a long-term fixed price contract for the sale of energy.

419 Mass. 281                                                283

Point of Pines Beach Association, Inc. *v.* Energy Facilities Siting Board.

tional approval. Altresco will not receive final approval of its project until it complies with this condition. The Siting board finds that, at such time that Altresco complies with this condition, Altresco will have demonstrated that the proposed project will provide a necessary energy supply for the Commonwealth."

A single justice of this court allowed Altresco's motion to intervene in this appeal, and reserved and reported the matter to the full court.

General Laws c. 164, § 69J, provides in relevant part:

"No applicant shall commence construction of a facility at a site unless a petition for approval of construction of that facility has been approved by the board . . . . The board shall within twelve months from the date of filing approve a petition to construct a facility . . . if it determines that it meets the following requirements: . . . plans for expansion and construction of the applicant's new facilities are consistent with . . . policies stated in section sixty-nine H *to provide a necessary energy supply for the commonwealth* with a minimum impact on the environment at the lowest possible cost . . . ." (emphasis added).

The statute "requires that the energy the facility will supply is necessary for the Commonwealth." *New Bedford* v. *Energy Facilities Siting Council*, 413 Mass. 482, 486 (1992). In the absence of need, a facility cannot properly be approved.

Since Altresco's proposal contemplated a facility that would begin operation in 1996, the board considered whether, beginning in that year, the Commonwealth would have need for the energy the facility is designed to generate. In order to make the required showing, Altresco submitted to the board voluminous material regarding capacity and demand forecasts for the Commonwealth and for New England. The board found the record to be "unclear regarding the ability of Massachusetts utilities to acquire surplus sup-

plies from out-of-state providers" before the year 2000, and thus concluded that, "based on the record, the Siting Board is unable to determine that the proposed project is needed to provide a necessary energy supply for the Commonwealth prior to the year 2000."

The board then turned to a procedure that it had used in an earlier decision on remand in *Eastern Energy Corporation* (Remand). See *Attorney General* v. *Energy Facilities Siting Board, post* 1003 (1995). In that case, the board concluded that, for the years in which the Commonwealth's energy requirements might be met by surplus energy produced elsewhere in New England, the board would nevertheless find the Commonwealth to have need of energy if the board were to receive signed power purchase agreements, previously approved by the Department of Public Utilities (department), which provide buyers for a specified percentage of the proposed facility's output. In the present case, the board applied the same principle and concluded that "at such time as Altresco [submits approved power purchase agreements], Altresco will have demonstrated that the proposed project will provide a necessary energy supply for the Commonwealth." The plaintiffs challenge the board's logic, arguing that an approved power purchase agreement, standing alone, cannot demonstrate need.

In *Eastern Energy Corporation* (Remand), the board did not explain how the existence of approved power purchase agreements would demonstrate the existence of Commonwealth need. The board merely cited its own earlier (1987) decision, *Northeast Energy Associates*, for the proposition that signed and approved power purchase agreements constitute prima facie evidence that the energy contracted for is needed by the Commonwealth. The *Northeast Energy Associates* decision, however, does not support the proposition for which it is cited. In that case, the board concluded that a power purchase agreement may be evidence that a particular *utility* needs energy, but the board did not conclude that the existence of such an agreement by itself demonstrates the *Commonwealth's* need for energy, and no explanation of the

inferability of Commonwealth need from utility need has been furnished to us either in reasoned argument or by reference to board decisions.

In *Northeast Energy Associates*, the board did find Commonwealth need based *in part* on evidence of a utility's need. The board's "[c]onclusion on [n]eed" was as follows:

> "NEA [Northeast Energy Associates] has established (1) that New England needs at least 300 MW of additional power resources for reliability purposes by 1990, and (2) that the Commonwealth is likely to receive reliability and economic benefits from the proposed additional power within the same time period. Accordingly, the Siting Council finds that the proposed 300 MW of additional power resources are needed by 1990."

The board relied on an almost identical rationale in the original *Eastern Energy Corporation* case and, on appeal in that case, this court rejected that rationale. *New Bedford v. Energy Facilities Siting Council, supra* at 489-490.

The board argues that it properly may rely on approved power purchase agreements to establish Commonwealth need because the department must be satisfied of the existence of such need as a prerequisite to its approval. By according deference to the department's findings in this regard, the board argues, the public interest is served by ensuring a harmonious and consistent energy policy. Such reasoning fails to take into account G. L. c. 164, § 69J's provision that the "board shall . . . approve a petition to construct a facility . . . if it determines that it meets the following requirements: . . . plans for expansion and construction of the applicant's new facilities are consistent with . . . policies stated in section sixty-nine H to provide a necessary energy supply for the commonwealth . . . ." The board must ensure that every project it approves is necessary, and it may not abdicate its responsibility by relying on conclusions of the department. We note that, in this case, the board concluded that "based on the record, the Siting board is unable to determine that

the proposed project is needed to provide a necessary energy supply for the Commonwealth prior to the year 2000."

Even apart from the statutory requirement that the board make an independent finding of Commonwealth need as a prerequisite to approving construction of a facility, the board's approval in this case must be set aside because, standing alone, the department's approval of a power purchase agreement does not warrant an inference of Commonwealth need. This is illustrated by the very agreement relied on by the board and Altresco in this case. The board has concluded that a signed and approved contract between Altresco, as supplier, and Boston Edison Company, as purchaser, will be sufficient to establish that the proposed project will provide a necessary energy supply for the Commonwealth. Altresco argues that the board has a right to supplement its statistical forecasts with a so-called "market test"; the agreement demonstrates consumer demand (need). However, at least in this case, as we explain below, it is apparent that the Altresco-Boston Edison power purchase agreement contemplated by the board's order would not be the product of market forces.

As part of its implementation of the Federal Public Utility Regulatory Policies Act of 1978, 16 U.S.C. §§ 796 and 824a-3 (1988), which was enacted to encourage the development of alternative energy sources that would reduce the demand for fossil fuels, the department adopted regulations that require electric utilities to request project proposals from nonutility generators for the furnishing of electric power pursuant to long term fixed price contracts. Boston Edison Company was ordered by the department to proceed with a request for proposals, which led to the Altresco proposal that was ultimately approved. Boston Edison is thus faced with entering into the power purchase agreement with Altresco by compulsion and without reference to market forces. Claiming that it has no need for additional energy, Boston Edison has contested the department's mandate that it purchase it, *Boston Edison Co.* v. *Department of Pub. Utils.*, 417 Mass. 458 (1994), and continues to contest that man-

date by appealing the board's decision after remand. That appeal is now before this court.

We remand the case to the single justice with instructions that the board's decision issued December 15, 1993, be vacated. We leave any question concerning a reopening of the board's hearings to the discretion of the board.[6]

*So ordered.*

---

[6]We have considered and reject Altresco's argument that the plaintiffs lack standing to bring this appeal.