CABLEVISION SYSTEMS CORPORATION *vs*. DEPARTMENT OF
TELECOMMUNICATIONS & ENERGY & another[1]
(and a consolidated case).

Suffolk. September 10, 1998. - December 8, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Administrative Law*, Proceedings before agency, Standing. *Public Utilities*,
Intervention, Judicial review. *Community Antenna Television Systems*.

The Department of Telecommunications and Energy did not err or abuse its
discretion in denying full intervener status to a provider of telecommunica-
tions and cable systems in a proceeding seeking approval of a public
utility's holding company proposal, where the department concluded that
its statutory obligation to consider whether the proposal was consistent
with the public interest did not require it to consider the consequences of
competition between the plaintiff and an unregulated affiliate of the public
utility; consequently, the plaintiff did not qualify as an "aggrieved party in
interest" and could not maintain an appeal from the decision of the depart-
ment in that proceeding. [437-439]

CIVIL ACTIONS commenced in the Supreme Judicial Court for
the county of Suffolk on November 7, 1997, and May 14, 1998,
respectively.

The cases were consolidated and were reported by *Marshall*,
J.

*Jeffrey S. Robbins* (*A. W. Phinney, III*, with him) for the
plaintiff.

*Peter T. Wechsler*, Assistant Attorney General, for Depart-
ment of Telecommunications and Energy.

*Roscoe Trimmier, Jr.* (*Luke T. Cadigan* with him) for Boston
Edison Company.

*Patricia Comfort*, for Massachusetts Public Interest Research
Group, amicus curiae, submitted a brief.

WILKINS, C.J. We have before us, on a reservation and report
by a single justice of this court, the appeal of Cablevision

[1]Boston Edison Company, intervener.

Systems Corporation (Cablevision), pursuant to G. L. c. 25, § 5, from a decision of the Department of Telecommunications & Energy (department) approving a holding company proposal of the intervener Boston Edison Company (Edison).[2] Under G. L. c. 25, § 5, only an "aggrieved party in interest" may appeal from a decision of the department. The department did not grant Cablevision status as a party but did allow it the role of a limited participant. The department and Edison moved to dismiss Cablevision's appeal.

A limited participant does not qualify as a party in interest entitled to appeal department decisions. See *Robinson* v. *Department of Pub. Utils.*, 416 Mass. 668, 671 n.3 (1993); *Attorney Gen.* v. *Department of Pub. Utils.*, 390 Mass. 208, 216-217 (1983).[3] It is well established, however, that a petitioner would have standing to appeal pursuant to G. L. c. 25, § 5, if the department improperly denied it full intervener status. See *KES Brockton, Inc.* v. *Department of Pub. Utils.*, 416 Mass. 158, 164 (1993); *Save the Bay, Inc.* v. *Department of Pub. Utils.*, 366 Mass. 667, 673 (1975).

Cablevision, a provider of telecommunications and cable systems, contends that the department committed an error of law and an abuse of discretion in denying it status as a party, pursuant to G. L. c. 30A, § 1 (3) (c). It argues that the department failed to recognize that the effect on Cablevision of Edison's corporate restructuring was a relevant consideration in the commission's decision. It argues that it would be "substantially and specifically affected" by approval of Edison's proposal because it is a competitor and potential competitor of Edison's unregulated video and telecommunications affiliate. In particular, Cablevision claims that the holding company structure would allow Edison to use assets of its regulated activities unfairly and unlawfully to subsidize its affiliate's activities in the cable and communications market.

Under G. L. c. 164, § 96, the department was charged with deciding whether Edison's proposal was "consistent with the public interest." The department determined that Cablevision was not "substantially and specifically affected" by the proceed-

---

[2] The department is the successor to the Department of Public Utilities (DPU). Where appropriate, references to the department include the DPU.

[3] An agency may allow a person to become a party who shows "that he may be substantially and specifically affected by the proceeding." G. L. c. 30A, § 10 (4).

ing because its claims arose out of its status as a competitor of Edison's unregulated cable industry affiliate. Therefore, the department rejected Cablevision's petition to intervene as a full party. The department concluded that its task was to assess the public interest in terms of how the proposed merger might affect Edison's monopoly ratepayers. To that end it would "consider appropriate safeguards to ensure that monopoly ratepayers do not subsidize unregulated activities." Any investigation concerning the impact of competition was limited to the effects of competition within the electric industry. The department ruled that to consider the impact over competition in other industries "would have been impracticable given the vast array of markets a company may choose to pursue." The department approved the merger.[4]

Cablevision claims that the department's narrow definition of the words "consistent with the public interest" led to the department's denial of Cablevision's motion for full party status. The department did not commit an error of law in concluding that its statutory obligation to consider the public interest did not require it to consider the consequences of competition between Cablevision and Edison's unregulated affiliate. The department has not considered inter-industry competition to be a relevant factor in evaluating the public interest under G. L. c. 164, § 96. In various circumstances, intra-industry competitors have had standing to challenge agency action that allegedly caused them harm. See *Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.,* 373 Mass. 290, 295-296 (1977); *Everett Town Taxi, Inc.* v. *Aldermen of Everett,* 366 Mass. 534, 538-539 (1974); *South Shore Nat'l Bank* v. *Board of Bank Incorporation,* 351 Mass. 363, 367-368 (1966); *A.B. & C. Motor Transp. Co.* v. *Department of Pub. Utils.,* 327 Mass. 550, 551 (1951). There is, however, no parallel inter-industry authority that supports standing. Our cases have recognized that the department's task, assigned by the

---

[4]At the time of the department's decision, Edison was the only Massachusetts-based, investor-owned electric utility not organized in a holding company structure. The department concluded, among other things, that, through formation of a holding company that would own all Edison's stock, Edison's affiliate could pursue unregulated business opportunities in competitive markets without the delays inherent in the regulatory process. The department determined that structural separation of regulated business activities from unregulated business activities would insulate ratepayers from the risks inherent in a single corporate entity engaging in both activities.

Legislature, is the "protection of ratepayers." See *Commonwealth Elec. Co.* v. *Department of Pub. Utils.*, 397 Mass. 361, 369 (1986), cert. denied, 418 U.S. 1036 (1987), and cases cited.

Cablevision did not have the right to full standing as a party in the agency proceeding (G. L. c. 30A, § 1 [3]), and the department did not abuse its broad discretion in denying Cablevision that status. The department, on its own motion, commenced a proceeding to investigate Cablevision's allegation that Edison had improperly subsidized its unregulated activities with assets of its regulated activities. Moreover, the department commenced a rulemaking proceeding to consider revision of its standards of conduct governing relationships between gas and electric distribution companies and their unregulated affiliates. The fact that these other proceedings were undertaken, with Cablevision as a full participant, certainly justifies, without more, the department's exercise of discretion to limit Cablevision's status in Edison's holding company proceeding.

Cablevision's other arguments require little discussion. There is no merit to Cablevision's claim that the department deviated from established practice and thus failed to apply reasoned consistency in its decision. The department's findings of fact and reasons for its decision were adequate.

Although Cablevision's arguments on appeal are not persuasive, we reject Edison's claim, pursuant to G. L. c. 211, § 10, that Cablevision's appeal is frivolous, justifying the imposition of double costs. Cablevision presented an issue not previously decided, and, although its argument has been found to be unpersuasive, its appeal is not frivolous. The convergence of the telecommunications and cable television industries with energy industries presents new challenges, and Cablevision's attempt to obtain consideration of inter-industry competition is not wholly without merit.

A judgment shall be entered in the county court dismissing the appeal of Cablevision Systems Corporation.

*So ordered.*