ARNOLD B. TOFIAS, trustee,[1] *vs.* ENERGY FACILITIES SITING BOARD & another.[2]

Suffolk. December 6, 2000. - November 14, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Energy Facilities Siting Board. Public Utilities,* Electrical transmission line, Intervention. *Practice, Civil,* Standing.

In a civil action appealing the decision of the Energy Facilities Siting Board (board) approving a proposal to construct a power plant in an industrial park, the owner of a parcel of land abutting the land on which a new transmission line would be placed to connect the power plant to an existing transmission line was not a "party in interest aggrieved by the decision of the board" within the meaning of G. L. c. 164, § 69P, and therefore lacked standing to pursue the appeal, where the board properly exercised its discretion in ruling that the parcel owner's speculative claims did not render it substantially and specifically affected by the proposal so as to qualify the parcel owner as an intervener in the proceedings before the board, where the board's decision did not deviate so markedly from prior board practice that the decision lacked reasoned consistency, and where the board's decision did not contravene its regulation regarding pleading requirements. [345-352]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on April 7, 2000.

The case was reported by *Ireland,* J.

*Michael D. Vhay (Laura H. Pawle* with him) for the plaintiff.

*Peter T. Wechsler,* Assistant Attorney General, for Energy Facilities Siting Board.

*David S. Rosenzweig (John K. Habib & Cheryl A. Blaine* with him) for Brockton Power, LLC.

SOSMAN, J. Arnold B. Tofias, trustee of the Julius Tofias Realty Trust (trust), has appealed from the decision of the Energy Facilities Siting Board (board) approving the proposal of Brockton Power, LLC (Brockton Power), to construct a power plant

---

[1] Of the Julius Tofias Realty Trust.
[2] Brockton Power, LLC.

in an industrial park in Brockton. G. L. c. 164, § 69P. The trust does not challenge any aspect of the proposal for the actual power generating facility, but objects to the proposed overhead transmission lines that would connect the plant to an existing electric company transmission line. The route for those transmission lines abuts the trust's property, and the trust claims that the lines would adversely affect the property by the emission of electromagnetic fields (EMF). On appeal, the trust complains that the board erred in denying its motion to intervene as a party in the proceedings and limiting the trust's status to that of an "interested person." G. L. c. 30A, § 10 (4).[3] The matter was reserved and reported to us by a single justice of this court. For the reasons set forth below, we conclude that the trust is not a "party in interest aggrieved by a decision of the board" and thus lacks standing to pursue an appeal of the board's decision. G. L. c. 164, § 69P.

1. *Background.* Pursuant to G. L. c. 164, § 69J ¼, Brockton Power petitioned the board for approval of a proposed 270 megawatt natural gas-fired generating facility to be located on a thirteen-acre parcel in an industrial park in Brockton. Electric output from the proposed facility would be carried by a new overhead 115 kilovolt transmission line running along a railroad right of way a distance of 3,500 feet, where it would then connect with an existing transmission line. The new transmission line would consist of three high-voltage power cables hung on seventy-four-foot transmission towers, spaced every 400 feet along the route.

The trust owns a vacant twenty-one acre parcel of land in Brockton. An existing 115 kilovolt power line runs across a corner near the southern boundary of the trust parcel. On its eastern boundary is an active railroad line. The area is zoned for industry, and various industrial uses are in the immediate vicinity of the trust's vacant parcel. The trust parcel does not abut the site on which Brockton Power proposes to build its generating facility. However, in its original application, Brockton Power proposed to run a portion of the connecting transmis-

[3] Hearings on petitions for approval to construct a generating facility "shall be adjudicatory proceedings under the provisions of [G. L. c.] 30A." G. L. c. 164, § 69J ¼.

sion line (approximately 1,360 feet) immediately adjacent to the eastern boundary of the trust property.

On March 10, 1999, the deadline for filing any petition to intervene or to participate as an interested person in the proceedings on Brockton Power's application, the trust sought leave to intervene as a party. After identifying the trust's ownership of its parcel and explaining its location in relation to the proposed transmission line, the trust's petition to intervene identified its interest in the proceedings as follows: "[E]lectromagnetic fields associated with transmission lines vary, in part, according to the distance from the source of the field . . . . The [Brockton Power] Petition does not disclose the precise alignment of the [Brockton Power] Line, but it is likely that the [trust] Parcel will be the property closest to the longest portion of the [Brockton Power] Line. Accordingly, the [trust] has a substantial and specific interest in seeing that the construction and operation of the [Brockton Power] Line does not lead to a substantial loss in the value of the [trust] Parcel." No other basis for intervention was identified in the trust's petition.[4]

On April 8, 1999, a board hearing officer denied the trust's petition to intervene. The hearing officer noted that the petition to intervene contained nothing beyond the trust's conclusory assertion that it would be substantially and specifically affected by the project, and that the trust "does not identify existing or likely future uses of its property that would be affected by environmental impacts from the transmission interconnection line." The mere reference to the line's generation of EMF "does not provide a nexus sufficient to establish substantial and specific effect" on the trust parcel, and alleged adverse effect on the value of the trust parcel did not come within the ambit of the statute. See G. L. c. 164, § 69J ¼. Finally, the hearing of-

---

[4]On March 18, 1999, after the deadline for filing a petition to intervene, the trust filed a request for hearing on its petition to intervene. In that request, the trust sought to amplify its grounds for intervention, claiming that the proposed transmission lines would have "several potential environmental impacts, including but not limited to effects from [EMF] and visual impacts" and that, as an abutter to a portion of that transmission line, the trust had an "interest in minimizing the environmental effects" of those transmission lines. The hearing officer denied the trust's request for hearing, and looked solely at the contents of the trust's original petition in ruling on the trust's request to intervene.

ficer noted that the board had, in the past, allowed intervention by abutters to proposed power plants because "[p]ower plants are typically large structures with many potential attendant environmental impacts." While the statutory definition of "generating facility" includes "transmission . . . interconnections," transmission lines alone "do not automatically pose the same environmental impacts on abutters as might inure to abutters to the power plant itself."[5]

Although denying the trust's petition to intervene as a party, the hearing officer allowed the trust (and several other entities) to participate in the proceedings as "interested persons." As an "interested person," the trust was allowed to (and did) present argument, file briefs, and submit comment on the hearing officer's tentative decision. Lacking status as a party, the trust was not allowed to conduct discovery, present evidence at the hearing, or cross-examine witnesses.

Prior to the hearing, the board had asked Brockton Power to consider whether modifications to the route for the transmission line might minimize the impacts (both visual and EMF) on nearby residential areas. In response, Brockton Power submitted an alternative route that would keep the line further from (and far less visible to) existing residences. At the hearing, Brockton Power expressed a willingness to make such a modification to the route if the board preferred that alternative.

Based on the fact that the alternative, if adopted, would run an additional segment of the line (another 518 feet in length) set back fifty feet from the northern boundary of the trust property,

---

[5]The trust sought reconsideration, claiming that ruling on its petition without a hearing had "deprived the [t]rust of the opportunity to explain 'existing or likely future uses of its property that would be affected by environmental impacts from [Brockton Power's proposed] transmission interconnection line.' " The hearing officer rejected that argument, noting that the trust had had such an opportunity in its original petition, but had "simply failed to either allege or demonstrate how it may be substantially or specifically affected by either electromagnetic or visual impacts (or any other justiciable impact) of the proposed project." Noting that it was not incumbent on the trust to present "factual proof" of such an impact in its petition to intervene, the hearing officer did insist that there be "at least some statement of connection or 'nexus' between the [board's] statutory mandate and the interven[e]r status which was being sought." Where the original petition to intervene did not contain such a statement, the petition was denied without a hearing.

the trust filed a renewed petition to intervene. In that renewed petition, the trust alleged that, in other properties it had developed, it had had to set buildings back from transmission lines, and that the placement of the proposed transmission line adjacent to two boundaries of the trust property (in combination with the existing transmission line on its southern boundary) would "substantially shrink the environmentally safe building 'envelope' on the [trust] Parcel." The trust claimed that "[e]mployers will be reluctant to place employees underneath or near high-voltage lines, and companies will be unwilling to place sensitive electronic equipment on the site."

The hearing officer treated the trust's renewed petition as a motion for reconsideration, granted reconsideration in light of the potential change in the transmission line route, and again denied the petition to intervene. The hearing officer reasoned that the alleged claim of being substantially and specifically affected was speculative:

> "[The] [t]rust's arguments regarding potential future commercial uses in which people or electronic equipment might be affected by EMF or visual impacts are conjectural. In essence, [the trust] asks the [board] to postulate future commercial tenants who would be dissuaded from locating on the [trust] Parcel by transmission lines on three, but not on two or one, of its property boundaries. Given the commercial and industrial character of neighboring properties and the proposed setback of the transmission line, 50 feet from [the trust's] property line, it is speculative to postulate that there would be prospective commercial tenants who would be so dissuaded from locating on [the trust's] parcel."

Moreover, even that speculative theory of how it would be affected by the transmission lines was, as in the original petition, still "grounded primarily upon economic concerns that are outside of the [board's] mandate."[6]

The trust remained in the proceedings as an "interested

---

[6]Although not articulated as a basis for the hearing officer's conclusion that the trust's interests in the Brockton Power proposal were purely economic, the record indicates that the trust was a disappointed suitor that had sought to sell its land to Brockton Power. Indeed, the trust sought to introduce evidence that

person," argued against the transmission line aspects of the proposal, submitted briefs, and submitted comments on the hearing officer's tentative decision.[7] The trust took issue with the EMF projections submitted by Brockton Power, and argued that the EMF and visual impacts associated with the transmission line should be minimized by requiring Brockton Power to bury the transmission cables underground.

In its final decision, the board approved the Brockton Power project, with the proposed partial relocation of the transmission line so as to move it farther away from residential areas. The board found the EMF impacts associated with this project to be well within acceptable limits that had been approved for prior projects. Based on the fact that the scientific evidence still did not substantiate the existence of human health risks resulting from EMF exposure, the board concluded that the significantly increased cost of underground cables was not justified. This appeal followed.

2. *Discussion.* The trust's sole contention is that the board abused its discretion in denying the trust's motion to intervene. Had it been allowed to intervene, the trust argues that it would have presented evidence concerning EMF impacts and the relative costs of burying the transmission cables to minimize those impacts. The trust thus asks us to vacate the board's decision

---

Brockton Power could construct the plant on the trust parcel and connect to the existing transmission line on site, and criticized Brockton Power for having rejected the trust's asking price (contending that it was, once "adjusted for the size" of the parcel, less costly than the site chosen by Brockton Power). Meanwhile, having failed in its attempt to convince Brockton Power to purchase the property, the trust gave an option to purchase the trust parcel to a competing power plant developer. The interests of that competitor (and hence the prospects that the option would be exercised) would be enhanced by the defeat or delay of Brockton Power's proposed plant. While the hearing officer did not refer to these facts concerning the trust's ongoing attempts to sell the parcel to either Brockton Power or another power plant developer, those facts corroborate the hearing officer's conclusion that the trust's interests in the board's proceedings were economic, not environmental.

[7]The trust attempted to submit an offer of proof describing the evidence that it wished to submit. Based on the fact that the trust was not a party (and therefore not allowed to submit its own evidence), the offer of proof was rejected.

and order the board to reopen the proceedings so that it may present such evidence as an intervener.[8]

In order to pursue the present appeal, the trust must demonstrate that it is a "party in interest aggrieved by a decision of the board." G. L. c. 164, § 69P.[9] Where, as here, the appellant was not granted party status before the agency, the trust must show "that as matter of law [it] was entitled to intervene before the [board] and was improperly denied that right[,] or that [it] is a person who as matter of constitutional or statutory law was entitled to participate fully in the proceedings and who on proper notice did make an appearance in said proceedings." *Save the Bay, Inc.* v. *Department of Pub. Utils.*, 366 Mass. 667, 673 (1975). See *Cablevision Sys. Corp.* v. *Department of Telecommunications & Energy*, 428 Mass. 436, 437 (1998); *Newton* v. *Department of Pub. Utils.*, 339 Mass. 535, 544 (1959).

Intervention in proceedings before the board is governed by G. L. c. 30A, § 10. See G. L. c. 164, § 69N. In adjudicatory proceedings, "agencies *may* . . . allow any person showing that he may be substantially and specifically affected by the proceeding to intervene as a party in the whole or any portion of the proceeding, and allow any other interested person to participate by presentation of argument orally or in writing, or for any other limited purpose, as the agency may order" (emphasis added). G. L. c. 30A, § 10 (4). Based on that permissive "may," this court has repeatedly recognized that agencies have broad discretion to grant or deny intervention. See *Cablevision Sys. Corp.* v. *Department of Telecommunications & Energy, supra* at 439 (agency has "broad discretion" to deny intervention); *KES Brockton, Inc.* v. *Department of Pub. Utils.*, 416 Mass. 158, 165 (1993) (department has "wide discretion to grant, limit, or deny

[8]The trust does not argue that the record before the board was inadequate to support its approval of the overhead transmission connection, but seeks a remand to expand that record and have the board reconsider the option of requiring Brockton Power to lay the cable underground.

[9]Judicial review of the board's decisions under G. L. c. 164, § 69P, incorporates the procedures and standards of G. L. c. 25, § 5, governing review of decisions by the Department of Telecommunications and Energy. Under G. L. c. 25, § 5, as under G. L. c. 164. § 69P, only "an aggrieved party in interest" may pursue an appeal from the agency's decision.

a person leave to intervene"); *Attorney Gen.* v. *Department of Pub. Utils.*, 390 Mass. 208, 216 (1983) (denial of intervention within department's "broad discretion"); *Boston Edison Co.* v. *Department of Pub. Utils.*, 375 Mass. 1, 45 & n.27 (1978) (G. L. c. 30A, § 10, gives department "broad discretion with regard to interveners"). "The discretion to limit intervention was obviously intended to permit the department to control the extent of participation by persons not sufficiently and specifically interested to warrant full participation, which might interfere with complicated regulatory processes." *Newton* v. *Department of Pub. Utils.*, *supra* at 543 n.1.

The trust argues that the board erred in concluding that the trust was not "substantially and specifically affected" by the Brockton Power proposal. It is true that environmental impacts, and thus EMF impacts, are within the ambit of the board's statutory mandate (see G. L. c. 164, § 69J ¼ [board determines whether plans for generating facility "minimize the environmental impacts consistent with the minimization of costs associated with the mitigation, control, and reduction of the environmental impacts"]), and that the subject matter of the trust's alleged concern is thus one that the statute was designed to protect.

However, the trust's original petition to intervene did not identify what impacts EMF allegedly would have on its property. It stated only that EMF impacts "vary, in part, according to the distance from the source of the field," and that the trust property would probably be "closest to the longest portion of the [Brockton Power] Line." A statement that one will be "closest" to anticipated EMF emanating from a transmission line does not, by itself, identify any impact from the line. Indeed, the original petition specified not an environmental harm but a purely economic one, i.e., that the trust had "a substantial and specific interest in seeing that the construction and operation of the [Brockton Power] Line does not lead to a substantial loss in the value of the [trust] Parcel." The trust argues, correctly, that environmental harms may have economic consequences, and the fact of resulting economic harm does not take away from an allegation of environmental impact. However, the trust never alleged an environmental harm from which economic consequences would also ensue. Its original

petition described *no* form of adverse environmental impact, but only a fear of "a substantial loss in the value" of its property.

As to the trust's renewed petition to intervene (which hypothesized that if commercial buildings were ultimately built close to the transmission lines, some tenants might be "reluctant" to occupy the space), the board again did not abuse its discretion in treating the trust's alleged concerns as too speculative. The trust had held the parcel as vacant land for many years, and the trust did not identify any plans (either imminent or long range) for the property, beyond the general proposition that the trust would someday "develop" the property in an unspecified way. EMF has no impact on vacant land. Its adverse impacts (if any) depend on the precise uses of the land and their proximity to the transmission line. In the absence of any proposed uses, or any plan stating how close to the transmission line those unknown future uses might be, the claimed impacts of EMF were properly viewed as "conjectural" and "speculative."[10] The board did not abuse its discretion in ruling that the trust's claim of future potential EMF impacts on

---

[10]The trust protests this analysis as an unjustifiable distinction between vacant property and occupied property. In the case of claimed EMF impacts, the distinction is readily justified. Vacant property can suffer various forms of environmental damage, but damage from EMF (if any) is inexorably linked to the actual use of the property and the precise location of that use in relation to the source of the EMF. For example, EMF from a transmission line may interfere with computer equipment if that equipment is too close to the transmission line. See *Westchester Assocs., Inc.* v. *Boston Edison Co.*, 47 Mass. App. Ct. 133, 134, 137 (1999) (distorted images on computer screens in office building located twenty-four feet from 115 kilovolt transmission line; EMF not actionable as nuisance where "adverse effects would be experienced only by particular users of equipment sensitive to the fields"). However, other uses not involving computers or sophisticated electronics (for example, a parking lot or a warehouse) would suffer no adverse consequences from EMF, and even uses relying on such equipment would suffer no adverse consequences as long as they were placed a sufficient distance from the transmission lines. (The trust proposed to submit evidence that industrial and commercial tenants wanted to be set back one hundred feet from the transmission lines.) The presence or absence of adverse effects from EMF is thus completely dependent on the precise locations of particular uses in relation to the lines that generate the EMF. As such, one cannot conclude that EMF has any impact on vacant land for which there is no specific proposed use and no specific proposed layout of that use. The board's decision denying intervention in this case does not suggest that vacant land cannot suffer adverse environmental effects, but merely recognizes the fact specific nature of EMF effects.

unidentified future uses of its property did not suffice to show that the trust was "substantially and specifically affected" by the Brockton Power proposal. G. L. c. 30A, § 10 (4). Cf. *Ginther* v. *Commissioner of Ins.*, 427 Mass. 319, 323 (1998) ("Injuries that are speculative, remote, and indirect are insufficient to confer standing").

The trust contends, in the alternative, that the board's handling of its petition to intervene deviated markedly from prior board practice such that the denial of the petition lacked reasoned consistency. "A party to a proceeding before a regulatory agency such as the [board] has a right to expect and obtain reasoned consistency in the agency's decisions." *Boston Gas Co.* v. *Department of Pub. Utils.*, 367 Mass. 92, 104 (1975). The requirement of "reasoned consistency" does not mean that an agency "may never deviate from its original position," but rather means only "that any change from an established pattern of conduct must be explained." *Robinson* v. *Department of Pub. Utils.*, 416 Mass. 668, 673 (1993).

First, the trust points to factors that the board has previously identified as relevant to the exercise of its discretion: "[T]he scope of the proceeding, the nature of the petitioner's interests, whether the petitioner's interests are unique and cannot be raised by any other petitioner, and the potential effect of the petitioner's intervention, including whether participation by the petitioner is likely to help elucidate the issues in the proceeding." The trust argues that it made a strong showing on each of those factors and that, consistent with the board's use of those factors in the past, the board should have allowed the petition. However, the board considered those factors on both the original petition to intervene and the later renewed petition. As discussed above, the board concluded that the only interest asserted in the original petition was economic and thus beyond the board's statutory mandate. As to the renewed petition, the claimed environmental effects were purely speculative. As such, the trust did not establish that the "nature of [its] interests" made it an appropriate candidate for intervention under the factors traditionally used by the board. Where the trust failed on that crucial factor, the board was not required to allow intervention merely because of the trust's showing on the remaining

factors.[11] There was no lack of reasoned consistency in application of these factors to the trust's petition to intervene.

The trust also argues that the board deviated from its longstanding practice of allowing "abutters" to intervene. The board has, in prior proceedings, consistently allowed intervention by homeowners who abut a proposed power plant. However, the board adequately explained its rational distinction between an abutter to a transmission line and an abutter to the actual generating facility. An immediate abutter to a power plant is confronted with the entire panoply of environmental impacts that such facilities inevitably pose — e.g., noise, pollution, traffic, and visual obstruction — and has a concrete stake in the minimization of those impacts. That prior board proceedings have allowed such abutters to intervene reflects the fact that the entirety of a plant's multitudinous environmental effects will be suffered by those in the immediate vicinity of the plant. However, where the only portion of the project that a proposed intervener "abuts" is the transmission line, one would not presume the existence of adverse environmental impacts from that mere proximity to a power line (see note 10, *supra*). Where

---

[11]The trust stresses that, as the only potential intervener to challenge Brockton Power on the issue of EMF, its interests were "unique," and its participation would therefore "help elucidate the issues in the proceeding." While those are factors to consider, neither uniqueness nor a desire to address issues that are not being addressed by any other party would entitle the trust to party status. See *Ginther* v. *Commissioner of Ins.*, 427 Mass. 319, 325 (1998) (standing to appeal agency decision not affected by fact that no one else would have standing); *Tax Equity Alliance for Mass.* v. *Commissioner of Revenue*, 423 Mass. 708, 716 (1996) (claim that no one else will have standing to sue "is not a reason to find standing where none exists"); *Robinson* v. *Department of Pub. Utils.*, 416 Mass. 668, 673 (1993) (fact that entirety of customer's concerns might not be raised by Attorney General in rate proceeding did not entitle customer to intervene).

The trust also argues that, in assessing whether its intervention would "help elucidate the issues in the proceeding," the hearing officer merely reiterated his conclusion that there was no "demonstrated link of substantial or specific effect" with the environmental issues at stake, a reiteration that the trust characterizes as a "non sequitur." We disagree. Where the trust identified no specific or substantial interest in the environmental issues under review and instead manifested only a concern with purely economic issues, its articulation of ostensible environmental concerns would be driven by its own economic interests. The trust would be an unlikely source of help in "elucidat[ing]" genuine environmental issues. See note 4, *supra*.

the trust's only alleged interest in the proceeding was based on the fact that a transmission line would run along its vacant commercially zoned property, the board could justifiably distinguish the trust from a party whose home was right next to the generating facility itself. There is no lack of "reasoned consistency" in such a distinction, and the basis for that distinction was fully explained in the board's decision.

In a similar vein, the trust argues that the pleading requirements for its petition to intervene were heightened beyond those normally required of other interveners. It complains that it was required to "substantiate or prove" the alleged environmental impact, whereas the board's regulations governing intervention only require a petitioner to state "the manner in which the petitioner is substantially and specifically affected by the proceeding." 980 Code Mass. Regs. § 1.05(2)(b) (1993). The board did not require the trust to "prove" anything in its petition. Holding that its statement of how it was affected by the Brockton Power proposal was too "speculative" did not fault the trust for any failure of proof. What was missing was *any* explanation as to how EMF from the transmission lines would affect the trust's unidentified future uses at unidentified locations on its property. To the extent that the board has on occasion accepted conclusory assertions of environmental impact made by homeowners who would abut a proposed power plant (whose petitions to intervene are often unopposed and as to whom the environmental impacts are obvious), that practice would not serve to lessen the requirement that the trust state the manner in which its interests would be affected by nearby transmission lines. The trust's initial petition identified no environmental impact at all, and its renewed petition did no more than speculate about what unidentified prospective tenants might be "reluctant" to do on account of nearby transmission lines. The petition failed to satisfy the board's regulation, which set forth the required contents of a petition to intervene.

3. *Conclusion.* Having failed to establish that the board erred in denying its motion to intervene, the trust has failed to show that it is a "party in interest aggrieved by a decision of the board," G. L. c. 164, § 69P, and therefore lacks standing to pursue the present appeal. A judgment shall be entered in the

county court dismissing the appeal of Arnold B. Tofias, trustee of the Julius Tofias Realty Trust.

*So ordered.*