453 Mass. 135 (2009)                                                              135

Providence and Worcester Railroad Company v. Energy Facilities Siting Board.

PROVIDENCE AND WORCESTER RAILROAD COMPANY *vs.*
ENERGY FACILITIES SITING BOARD & another.[1]

Suffolk. November 3, 2008. - January 27, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Energy Facilities Siting Board. Public Utilities,* Judicial review. *Oil and Gas.*
*Administrative Law,* Judicial review, Agency's interpretation of statute.
*Eminent Domain,* Validity of taking. *Statute,* Construction. *Words,* "Final
decision," "Oil facility," "New pipeline."

Discussion of the statutory framework granting the Energy Facilities Siting
Board the power to authorize a taking by eminent domain. [136-137]
This court decided to express its views on a question of law posed by parties
appealing a decision by the Energy Facilities Siting Board, where the ap-
peal, although not from a final decision for purposes of judicial review
under G. L. c. 25, § 5, had been fully briefed on the merits, where there
was a public interest in obtaining a prompt answer to the question, and
where the answer was reasonably clear. [139-140]
The Energy Facilities Siting Board (board) erred in deciding that G. L. c. 164,
§§ 69G and 69S, provided the board with the power to authorize an oil
pipeline company to take land by eminent domain for a pipeline that was
already in existence, where the express language of the statutory scheme
allowed the board to authorize such a taking only in connection with the
construction of new oil pipelines. [140-145]

CIVIL ACTION commenced in the Supreme Judicial Court for
the county of Suffolk on February 6, 2008.

A motion to intervene was considered by *Botsford,* J., and the
case was reported by her.

*Gerald J. Petros (David S. Rosenzweig* with him) for the
plaintiff.

*Stephen J. Brake (Sarah P. Kelly* with him) for the intervener.

COWIN, J. In this case we are asked to decide whether G. L.
c. 164, §§ 69G and 69S, give the Energy Facilities Siting Board
(board) the power to authorize an oil pipeline company to take
land by eminent domain for a pipeline that is not "new," a

[1]Mobil Pipe Line Company, intervener.

question of first impression in Massachusetts.[2] We hold, contrary to the decision of the board, that the statutory scheme allows the board to authorize a taking only in connection with the construction of new oil pipelines, not for pipelines already in existence, and does not authorize the board to do so in the circumstances of the present case.

*Statutory framework.* A brief explanation of the relevant statutory provisions provides the necessary framework. The board is an independent agency established by the Legislature within the Department of Public Utilities.[3] See G. L. c. 164, § 69H. "[Its] governing mandate . . . is to 'provide a reliable energy supply for the commonwealth with a minimum impact on the environment at the lowest possible cost.' " *Alliance to Protect Nantucket Sound, Inc.* v. *Energy Facilities Siting Bd.*, 448 Mass. 45, 47 (2006), quoting G. L. c. 164, § 69H.

General Laws c. 164, § 69S, permits "[a]ny company [to] petition the board for the right to exercise the power of eminent domain with respect to oil pipelines specified and contained in the proposed notice of intention submitted in accordance with [G. L. c. 164, § 69J,][4] if such company is unable to reach agreement with the owners of land for acquisition of any necessary estate or interest in land." Following notice and a public hearing, "[t]he board may . . . authorize the company to take by eminent domain under [G. L. c. 79] such lands necessary for the

---

[2]As explained in greater detail *infra*, G. L. c. 164, § 69S, provides the board with the power to authorize a taking by eminent domain with respect to certain oil pipelines. The oil pipelines subject to this authority are defined in G. L. c. 164, § 69G.

[3]The Department of Public Utilities became the Department of Telecommunications and Energy with the enactment of St. 1997, c. 164. General Laws c. 164, § 69G, was amended to reflect this change. St. 1997, c. 164, § 201. Subsequently, the Legislature changed the name of the Department of Telecommunications and Energy back to the Department of Public Utilities. See St. 2007, c. 19, §§ 21, 54. However, G. L. c. 164, § 69G, was not amended to reflect this subsequent change of name.

[4]The statute refers to G. L. c. 164, § 69I. That section, however, governs the filing of long-range forecasts, not notices of intention. The parties agree, and we concur, that this reference is a scrivener's error, caused by the Legislature's failure to update all the statutory cross references when it enacted St. 1992, c. 141, §§ 14 and 15, which moved the provisions governing the notice of intention from G. L. c. 164, § 69I, to G. L. c. 164, § 69J. Thus, we read the statute as referring to § 69J, which specifies the procedure for filing a notice of intention with the board.

construction of the oil pipeline as required in the public interest, convenience and necessity." *Id.*

The power to authorize a taking by eminent domain provided in § 69S applies "only to oil pipelines which are [oil[5]] facilities as defined in [G. L. c. 164, § 69G]." *Id.* Section 69G defines an "[o]il facility," in relevant part, as "any new pipeline for the transportation of oil or refined oil products which is greater than one mile in length except restructuring, rebuilding, or relaying of existing pipelines of the same capacity."

*Facts and proceedings.* The relevant facts are not in dispute. Since 1931, Mobil Pipe Line (Mobil) and its predecessors have owned and operated a common carrier pipeline transporting petroleum products from East Providence, Rhode Island, to Springfield. The present dispute concerns a 120-foot section of the pipeline that passes underneath a railroad bed in Oxford that the Providence and Worcester Railroad (P&W) owns. From the time of the pipeline's construction, P&W or its predecessors have leased an easement covering this 120-foot strip of land to Mobil or its predecessors, which has allowed for the pipeline's continued operation. The most recent such lease was entered into between Mobil and P&W in 1977. The lease provided for an initial term of five years, renewable up to five times, each for an additional five-year term, at Mobil's option. Mobil exercised the last of its renewal options in 2002. The lease was not replaced, and the parties subsequently were unable to reach an agreement on the purchase of a permanent easement over the land that the pipeline occupies. P&W made clear to Mobil its intent to treat Mobil as a trespasser — and to evict Mobil from P&W's property — should the parties ultimately fail to settle.

Shortly before the lease was to expire, Mobil petitioned the board, pursuant to G. L. c. 164, § 69S, for authorization to take an easement for its pipeline by eminent domain. Mobil also commenced an action in the Superior Court, requesting a preliminary

---

[5]General Laws c. 164, § 69G, defines both "[f]acilit[ies]" and "[o]il facilit[ies]." However, a "[f]acility" as defined in § 69G does not include oil pipelines, because it covers only structures associated with the generation, storage or transmission of electricity or natural gas. Because an "[o]il facility" is the only defined term that includes oil pipelines, we agree with the parties that G. L. c. 164, § 69S, is restricted to "oil facilities" as defined in § 69G.

injunction to prevent P&W from evicting Mobil pending the board's eminent domain decision. A judge in the Superior Court granted Mobil's request for injunctive relief, but conditioned the entry of the injunction on Mobil's filing an application with the board either for an advisory opinion regarding the applicability of G. L. c. 164, § 69S, to its dispute with P&W, or for a determination whether the board had jurisdiction over this section of the pipeline.[6]

Mobil subsequently filed a petition for determination of jurisdiction with the board. See 980 Code Mass. Regs. § 2.08 (2002). The board granted P&W leave to intervene in the proceedings, see 980 Code Mass. Regs. § 1.05(1) (2002), and P&W filed an opposition to Mobil's petition for determination of jurisdiction, as well as a motion to dismiss Mobil's original petition for the exercise of eminent domain. Before considering Mobil's eminent domain petition and P&W's corresponding motion to dismiss, the board decided to consider Mobil's petition for determination of jurisdiction.

Both parties submitted arguments, which we discuss later in more detail. Briefly, P&W maintained that the board had no power to authorize the condemnation of an easement because Mobil's pipeline was not "new," as P&W claimed the statute requires. P&W also argued that the board lacked the power to authorize a taking for a section of the pipeline less than one mile in length. Mobil contended that the statute gave the board the power to authorize the taking of land for "existing pipelines" if they were to be "restructur[ed], rebuil[t], or relay[ed]," and claimed that its pipeline therefore qualified. Following a hearing, a "presiding officer"[7] issued a tentative decision for board approval, agreeing with P&W that the board lacked power to authorize a taking on Mobil's behalf.

Mobil submitted comments on the tentative decision, and subsequently another hearing was held before the full board. Follow-

[6]It is not necessary to address whether the board's power to authorize a taking in connection with an existing oil pipeline under § 69S is "jurisdictional." The purpose of the judge's decision was preservation of the status quo pending the final resolution of the parties' dispute. The case has now been decided.

[7]The presiding officer is essentially a hearing officer. See 980 Code Mass. Regs. § 1.04(2) (2002).

ing deliberations, the board rejected the tentative decision and directed the presiding officer to prepare a new tentative decision upholding the board's authority. The hearing officer did so, and the board later voted to adopt this second tentative decision, with minor changes, as its final decision.

In its final decision, the board[8] recognized "the ordinary meaning of the word 'new,' " but concluded that "this does not resolve the controversy . . . because the words of a statute will not be read literally if to do so would be inconsistent with the legislative intent." It rejected the notion that the Legislature had intentionally denied the board "authority to grant eminent domain for existing oil pipeline facilities." Rather, the board suggested that "the Legislature simply failed to consider th[e] issue but . . . plainly would have provided the [board] the power of eminent domain concerning existing oil facilities." The board concluded that the Legislature had enacted a "comprehensive scheme of legislation concerning the siting of energy facilities and the security of the [Commonwealth's] energy requirements in the future," and that "[l]ogically this scheme should include [the power to authorize a taking by eminent domain for] both existing and new oil pipelines." The board decided that an interpretation of the statute that would prevent it from authorizing a taking to preserve an existing pipeline that is vital to the Commonwealth's energy supply would engender an "absurd result."

P&W filed a petition for appeal from the board's final decision to a single justice of this court.[9] See G. L. c. 164, § 69P, and G. L. c. 25, § 5. The single justice allowed Mobil's motion to intervene, and reserved and reported the case for consideration by the full court. We now reverse the board's decision for the reasons we shall discuss.

*Discussion.* 1. *Propriety of appeal.* Before considering the merits, we first must determine whether this appeal is properly

---

[8]Although the board filed a notice of appearance with the single justice, it did not submit a brief or participate in oral argument before the full court. On appeal, Mobil, as intervener, defends the board's decision.

[9]Because the presiding officer granted P&W intervener status in the proceedings below, a decision which has not been challenged, P&W may seek judicial review under G. L. c. 164, § 69P, as a "party in interest aggrieved by a decision of the board." Cf. *Tofias* v. *Energy Facilities Siting Bd.*, 435 Mass. 340, 346 & n.9 (2001).

before us. Under G. L. c. 25, § 5 (which G. L. c. 164, § 69P, incorporates by reference), an appeal is permitted only from a "final decision, order or ruling" of the board. See *Boston Gas Co.* v. *Department of Pub. Utils.*, 368 Mass. 780, 785-786 (1975). Although the board has styled its decision as "final," finality is "determined 'on the footing of its substance and not of its name.' " *Fitchburg Gas & Elec. Light Co.* v. *Department of Pub. Utils.*, 394 Mass. 671, 677 (1985), quoting *Check* v. *Kaplan*, 280 Mass. 170, 176 (1932). A decision is "final" for the purposes of taking an immediate appeal if it completely adjudicates the rights of the parties, leaving nothing further to be decided. See *Pollack* v. *Kelly*, 372 Mass. 469, 475-476 (1977).

Here, the board has not yet decided whether it will authorize a taking of P&W's property by eminent domain. It has decided only that it has the statutory authority to do so, if it determines (after a later hearing) that the taking is "required in the public interest, convenience and necessity." G. L. c. 164, § 69S. Such a decision is not "final" for the purposes of judicial review under G. L. c. 25, § 5. P&W's appeal is therefore premature. Nonetheless, we express our views on the question of law the parties have submitted to us because "the case has been fully briefed on the merits, . . . there is a public interest in obtaining a prompt answer to the question, and . . . the answer . . . is reasonably clear." *Brown* v. *Guerrier*, 390 Mass. 631, 632 (1983).

2. *The board's eminent domain authority.* Our review of the board's decision, governed by both G. L. c. 164, § 69P, and G. L. c. 25, § 5, is "limited, although not perfunctory." See *Stow Mun. Elec. Dep't* v. *Department of Pub. Utils.*, 426 Mass. 341, 344 (1997), quoting *Wolf* v. *Department of Pub. Utils.*, 407 Mass. 363, 367 (1990). We uphold the board's decision unless "it is based on an error of law, unsupported by substantial evidence, arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law."[10] *Box Pond Ass'n* v. *Energy Facilities Siting Bd.*, 435 Mass. 408, 412 (2001), quoting *Stow*

---

[10]In a footnote to its brief, Mobil suggests that this court lacks jurisdiction to decide this appeal, because G. L. c. 164, § 69P, limits the scope of our review to whether the board's decision is erroneous or an abuse of discretion under §§ 69H-69O, while this case concerns a question arising under § 69S. "Arguments relegated to a footnote do not rise to the level of appellate argument." *Commonwealth* v. *Lydon*, 413 Mass. 309, 317-318, citing Mass.

*Mun. Elec. Dep't* v. *Department of Pub. Utils.*, *supra.* "The party appealing from a decision of the board bears the burden of showing that the decision is invalid." *Andover* v. *Energy Facilities Siting Bd.*, 435 Mass. 377, 379 (2001), citing G. L. c. 25, § 5.

The issue in this case is the proper interpretation of G. L. c. 164, §§ 69G and 69S. In general, we give "substantial deference" to an agency's interpretation of those statutes which it is charged with enforcing. See *City Council of Agawam* v. *Energy Facilities Siting Bd.*, 437 Mass. 821, 828 (2002), citing *Gateley's Case*, 415 Mass. 397, 399 (1993). However, where the statute's meaning is clear and unambiguous, we give effect to the Legislature's expressed intent. See *Goldberg* v. *Board of Health of Granby*, 444 Mass. 627, 632-633 (2005). An incorrect interpretation of a statute by an administrative agency is not entitled to deference. See *Kszepka's Case*, 408 Mass. 843, 847 (1990), citing *School Comm. of Springfield* v. *Board of Educ.*, 362 Mass. 417, 441 n.22 (1972), *S.C.*, 365 Mass. 215 (1974).

It is well established that eminent domain statutes must be strictly construed because they concern the power to condemn land in derogation of private property rights.[11] See *Devine* v. *Nantucket*, 449 Mass. 499, 506 (2007), citing *Lajoie* v. *Lowell*, 214 Mass. 8, 9 (1913). See also A.L. Eno & W.V. Hovey, Real Estate Law § 18.1, at 528 (4th ed. 2004), and cases cited. The power of eminent domain "exists only in case the Legislature has delegated that power in express terms or by necessary implication; it is not to be inferred from vague and doubtful general phrases." *Trustees of Reservations* v. *Stockbridge*, 348 Mass. 511,

---

R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). Recognizing, however, that subject matter jurisdiction may be raised at any time, it seems that, even if there were no jurisdiction under G. L. c. 164, § 69P, and G. L. c. 25, § 5, this court would have jurisdiction to grant relief in the nature of certiorari. See G. L. c. 249, § 4.

[11]For its part, Mobil suggests this well-settled proposition has been abrogated by *Kelo* v. *New London*, 545 U.S. 469 (2005). This argument is without merit. The issue in *Kelo* concerned the authority of the States to take land for "public use" under the takings clause of the United States Constitution. See *id.* at 489-490. The question here, however, is not constitutional in nature, but one of statutory interpretation. *Kelo* does not mandate that we construe the statutory power to authorize a taking that the Legislature has delegated to the board to be coextensive with the permissible scope of eminent domain under the United States Constitution. See *id.* at 489.

514 (1965), quoting *Comiskey* v. *Lynn*, 226 Mass. 210, 212 (1917).

Informed by these principles, we consider the statutory text itself, "the principal source of insight into Legislative purpose." *New Bedford* v. *Energy Facilities Siting Council*, 413 Mass. 482, 485 (1992), *S.C.*, 419 Mass. 1003 (1995), quoting *Simon* v. *State Examiners of Electricians*, 395 Mass. 238, 242 (1985). In interpreting the statute, we attempt to give effect and purpose to all of its words, for "[b]arrenness of accomplishment is not lightly to be imputed to the legislative branch of the government." *Adamowicz* v. *Ipswich*, 395 Mass. 757, 760 (1985), quoting *Selectmen of Topsfield* v. *State Racing Comm'n*, 324 Mass. 309, 314 (1949). Where the statutory meaning is unambiguous we are constrained to follow it, unless "following the Legislature's literal command would lead to an absurd result, or one contrary to the Legislature's manifest intention." *White* v. *Boston*, 428 Mass. 250, 253 (1998).

By its terms, §. 69G's definition of "oil facilit[ies]" includes only "new" pipelines. Thus, Mobil's pipeline, which was completed in 1931, cannot be an "oil facility," because it is not "new." The term "new" is a familiar one, does not invite doubt, and requires no interpretation. It follows that the board is without power under § 69S to authorize the taking of an easement by eminent domain in this case. Our interpretation is well supported not only by the ordinary meaning of the word "new," but also by § 69S's limitation of the board's powers "to oil pipelines *specified and contained in the proposed notice of intention* submitted in accordance with [§ 69J]" (emphasis added). G. L. c. 164, § 69S. Under § 69J, the board must approve an oil company's notice of intention before the construction of any "oil facility" can commence. The notice of intention procedure is relevant only to "new" oil pipelines. See G. L. c. 164, § 69J. This limitation of the board's powers to oil pipelines "specified and contained within a notice of intention" makes no sense if the board may authorize takings for both existing and new oil pipelines. Accordingly, we conclude that eminent domain is available only in the latter circumstance.

The board believed that the foregoing interpretation of the statute would lead to an "absurd result," which should be

avoided. See *White* v. *Boston, supra* at 253. To illustrate its point, the board noted that, were Mobil to propose the construction of another pipeline along a different route, the board would have the power to authorize the taking by eminent domain of easements necessary for the new pipeline's construction. It could discern no reason why it should not also have the power to authorize a taking of P&W's land in the present case to preserve an existing pipeline. Recognizing its statutory mandate to "provide a reliable energy supply for the [C]ommonwealth," see G. L. c. 164, § 69H, the board considered it illogical for the Legislature to grant it the power to authorize a taking only for new pipelines, when its mission would equally be facilitated by a grant of such power with respect to existing pipelines. It concluded that a denial of such power could not have been intended by the Legislature.[12]

However, we do not believe that the distinction § 69S has drawn between new and existing oil pipelines is so irrational that the Legislature could not have intended it. In drafting earlier statutes that authorize takings on behalf of gas and electric companies, the Legislature granted the power to take land for the maintenance and preservation of existing facilities as well as for the construction of new facilities. See G. L. c. 164, § 72 (*a*) (allowing Department of Public Utilities to "authorize an electric company . . . to take by eminent domain under [G. L. c. 79] such lands . . . necessary for the construction and use or continued use as constructed . . . [of electric transmission lines]"); G. L. c. 164, § 75C (allowing Department of Public Utilities to "authorize [petitioning] company to take by eminent domain under [G. L. c. 79] such lands or . . . easements . . . necessary for the construction, operation, maintenance, alteration and

---

[12]Mobil makes a similar argument that the interpretation urged by P&W, which we adopt today, is irrational. It contends that it could invoke the board's power to authorize the exercise of eminent domain under § 69S merely by replacing the 120-foot section of its pipeline passing under P&W's property "across an immediately adjacent, but slightly different route, which would still cross P&W's property." It argues that this result is too wasteful to have been intended. This reasoning misses the mark. Such actions would be tantamount to "restructuring, rebuilding, or relaying" of that portion of the pipeline. As explained more fully *infra*, engaging in these activities with respect to existing pipelines of the same capacity does not create an "oil facility" for which the board may authorize the taking of land by eminent domain under § 69S. See G. L. c. 164, § 69G.

removal of [natural gas pipelines]"). We assume that the Legislature was aware of these prior enactments when it drafted § 69S, see *Jancey* v. *School Comm. of Everett*, 421 Mass. 482, 496 (1995), *S.C.*, 427 Mass. 603 (1998), and that "[h]ad the Legislature intended to [empower the board to authorize the taking of land for existing oil pipelines], it knew how to make its intent . . . clear." See *Lavecchia* v. *Massachusetts Bay Transp. Auth.*, 441 Mass. 240, 246 (2004). We also presume that the Legislature was aware of our prior decisions, see *supra,* standing for the proposition that statutes that authorize the taking of land by eminent domain are strictly construed. See *Opinion of the Justices*, 408 Mass. 1215, 1222 (1990). Therefore, we conclude that the Legislature made a choice to grant the board the power to authorize the exercise of eminent domain for "new" oil pipelines. That choice is not irrational, and it is not our role to question the wisdom of this decision. See *Prudential Ins. Co.* v. *Boston*, 369 Mass. 542, 547 (1976).

The language of § 69S provides the board with the power to authorize the taking of land only for "new" oil pipelines. The board may act only on the basis of express or implied statutory authority. See *Commissioner of Revenue* v. *Marr Scaffolding Co.*, 414 Mass. 489, 493 (1993). Here, the Legislature has not delegated any such authority with respect to existing pipelines. The reasoning of the board's decision may be reduced to the proposition that it would have been desirable to have such power. Regardless of whether this belief is correct, it cannot justify the board in claiming power the Legislature did not grant.

Mobil offers additional arguments in favor of the board's decision, but we consider them similarly unconvincing. Mobil concedes that the portion of its pipeline at issue is not "new," but argues the pipeline is nevertheless an "oil facility" under § 69G, for which the board may take an easement by eminent domain under § 69S. Relying on the so-called "except" clause of the definition, Mobil contends that the word "except" as used in the definition of oil facilities does not exclude existing pipelines, but creates an exception to the requirement that a pipeline be "new."[13] Thus, Mobil maintains that the definition of "oil facility" in

---

[13]Mobil made this same argument to the board. The board rejected it in its final decision as inconsistent with its cases and regulations.

§ 69G includes not only "new" pipelines, but also "existing pipelines of the same capacity" that are "restructur[ed], rebuil[t], or relay[ed]."[14] "[T]o apply the statute only to newly constructed pipelines," Mobil argues, would reduce the "except" clause to a redundancy, violating the "fundamental principle[] of statutory construction" that no part of a statute be interpreted as superfluous. See *Wolfe* v. *Gormally*, 440 Mass. 699, 704 (2004).

We are not persuaded. The most plausible purpose of this clause is to clarify that an existing pipeline that has been "restructur[ed], rebuil[t], or relay[ed]" is not an "oil facility,"[15] even though it is "new" in the sense that its components are fresh, "renovated" or "recreated."[16] See Webster's Third New Int'l Dictionary 1522 (1993). We think the Legislature clearly intended "new," as used in § 69G, to mean "[a] thing . . . not known [or] manufactured . . . before its advent." *Id.*

The Legislature has provided the board with the power to authorize the taking of land for an oil pipeline only if it is "new." Mobil must therefore seek its remedy from the Legislature, for neither this court nor the board has the power to "imply language in a statute if the Legislature has not provided it." *New England Power Co.* v. *Selectmen of Amesbury*, 389 Mass. 69, 74-75 (1983).

---

[14]Mobil concedes that it has no present intention to rebuild the portion of the pipeline at issue in this case. However, it argues that the pipeline comes within the purported exception for "rebuil[t]" existing pipelines because "from time to time, the pipeline . . . obviously will need repair and replacement work, including in this 120-foot segment," and because it is willing to rebuild this segment of the pipeline if doing so is necessary to allow the board to exercise its condemnation power under § 69S.

[15]Were we to accept the expansive interpretation of the "except" clause Mobil urges, see note 13, *supra*, it is difficult to imagine how any pipeline greater than one mile in length would not be an "oil facility," regardless of whether it were "new" or "existing." That this reading of the clause renders the word "new" virtually meaningless supplies an additional reason for rejecting Mobil's interpretation. See *Wolfe* v. *Gormally*, 440 Mass. 699, 704 (2004).

[16]We find additional support for this reading of the "except" clause in the board's regulations implementing analogous statutory provisions for natural gas and electric "facilities" under § 69G. Title 980 Code Mass. Regs. § 7.04(9) (1993) provides that certain activities involving the rebuilding or replacement of electrical facilities of similar capacity "are deemed not to constitute the construction of facilities subject to [the board's comprehensive review process]." A similar regulation applies to the reconstruction of natural gas facilities. See 980 Code Mass. Regs. § 7.07(8) (1993).

*Conclusion.* Because G. L. c. 164, §§ 69G and 69S, grant the board power to authorize an oil pipeline company to take land by eminent domain only for "new" pipelines, the board erred in claiming authority to exercise that power for the benefit of Mobil's existing pipeline, which is not "new."[17] We reverse the board's decision and remand for further proceedings consistent with this opinion.

*So ordered.*

[17]The interpretation we adopt today makes it unnecessary for us to decide whether the filing of a notice of intention is also a prerequisite under § 69S, or whether the board may authorize a taking under §§ 69G and 69S for a portion of a pipeline that is less than one mile in length, even though the over-all length of the pipeline exceeds one mile. We therefore do not address either P&W's or Mobil's arguments on these points.